## In re NATIONAL AIRCRAFT CORPORATION.

## DUGGAN v. SANSBERRY.

## NATIONAL AIRCRAFT CORPORATION v. SAME.

### Nos. 8655, 8656.

Circuit Court of Appeals, Seventh Circuit.

April 21, 1945.

Rehearing Denied June 11, 1945.

George O. Durham, Jerome F. Duggan, and Noah Weinstein, all of St. Louis, Mo., and Philip B. O'Neill, of Anderson, Ind. (B. Sherman Landeau and Max Sigoloff, both of St. Louis, Mo., of counsel), for appellants.

Ralph Bamberger, Isidore Feibleman, Julian Bamberger, and Charles B. Feibleman, all of Indianapolis, Ind., and Conrad S. Arnkens, of Anderson, Ind., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This appeal is from an order of the District Court of the Southern District of Indiana entered on June 5, 1944. That order denied separate petitions for review of a previous order, purporting to be presented by National Aircraft Corporation of Indiana, hereafter referred to as National, whose principal place of business and all of its assets are located in that State, and by James F. Duggan, trustee of the estate of Christopher Engineering Company of Missouri, hereafter referred to as Christopher, whose principal place of business is St. Louis. The order sought to be reviewed was entered May 3, 1944, and confirmed a sale of National's major assets by Sansberry, its trustee in bankruptcy.

The issue here presented involves a clash of jurisdiction between the district courts

of Southern Indiana, and the Eastern Division of the Eastern District of Missouri.

The principal question for our decision is whether the District Court of Missouri had jurisdiction on April 19, 1944, to decree as it did, "That the National Aircraft Corporation is a wholly owned subsidiary of the Christopher Engineering Company * * * the principal debtor herein, and is entitled to file its petition in these proceedings of the parent company," and to order appellee, the trustee appointed by the Indiana Court, to turn over all assets of National to a trustee appointed by itself. That question is to be decided from the following undisputed facts.

On December 27, 1943, Christopher filed its petition, in the District Court of Missouri, for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The petition was approved by that court and Duggan was appointed trustee. The resolution relied upon as authority for filing such petition did not purport to be an act of that corporation. It was signed only by A. B. Christopher, President, and J. M. Brown, Vice-President, and the name of the Company nowhere appears with the other signatures. They therein described themselves as owning a majority of the shares of stock of the Christopher Company and as constituting a majority of its board of directors. They further described Joe Dubman as the minority of the Board of Directors, who, on account of his hostility to the majority of the Board, had instituted a suit in the Missouri State Court for the appointment of a receiver for that Company. Under those conditions they said it was impossible to hold a formal meeting of the directors or stockholders, and they therefore ordered themselves, or either one, as President or Vice-President respectively, of the Christopher Company, to file that Company's petition for reorganization. The petition was signed by the debtor by A. B. Christopher, President, and verified by his oath.

On January 21, 1944, an involuntary petition in bankruptcy was filed against National in the District Court of Indiana, by certain of its creditors. On February 8, 1944, in that proceeding, National was adjudicated a bankrupt, an order of reference was made, and Sansberry was appointed receiver. On March 7, 1944, Sansberry was elected trustee by the creditors, took possession of the assets, and on March 21, 1944, he filed a petition before the Indiana referee to sell them. On April 6, 1944, the referee ordered the trustee to sell those assets on April 20, 1944.

J. M. Brown, a stockholder and director of Christopher, was also secretary of National when it was adjudicated a bankrupt. On April 19, 1944, he caused an intervening petition to be filed on behalf of National in Christopher's reorganization proceedings in Missouri, thereby seeking reorganization of National as a subsidiary of Christopher. That petition was signed "National Aircraft Corporation, a corporation, By J. M. Brown, Petitioner." It was verified by Brown's oath, which stated that he was Secretary of National, and that he was duly authorized to make the petition and affidavit in National's behalf. There was no showing as to how or by whom he was thus authorized. Moreover, the petition disclosed to that court that National had been adjudicated a bankrupt by the District Court in Indiana; that Sansberry had been appointed trustee, had taken possession of all the assets of National, and by order of that court had advertised a sale of such assets, beginning the next day at the debtor's place of business in Indiana, and that unless restrained by the District Court of Missouri, the sale would proceed as advertised. On the same day the District Court of Missouri found, "That the National Aircraft Corporation is a wholly owned subsidiary of the Christopher Engineering Company * * * the principal debtor herein, and is entitled to file its petition in these proceedings of its parent company." Thereupon the injunction issued on April 19, and was served upon Sansberry, Trustee, and his auctioneer the next morning at 9:30, the time scheduled for the sale to begin. The sale proceeded as advertised, a report thereof was made by the trustee to the referee on April 21, and it was approved by that referee on May 3, 1944.

On May 10, 1944, James F. Duggan as trustee of the estate of Christopher, and trustee of the estate of National (by virtue of the appointments of the District Court in Missouri) filed a petition in the District Court in Indiana to stay further proceedings in that court, and to set aside all orders made by it with respect to National on or after April 19, 1944. That court, as requested, reviewed such orders and confirmed the sale on June 5, 1944. Duggan, as trustee of both debtors, gave notice of appeal.

It is conceded by appellants that the District Court in Indiana had jurisdiction of National and its assets prior to April 19, 1944. However, they contend that by virtue of section 129 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 529, the jurisdiction in the Indiana Court terminated and became lodged in the District Court in Missouri, by reason of the latter's order on that date with respect to National's alleged petition for reorganization. Before there could be jurisdiction in the latter court, we think it must have been established that National was a subsidiary of Christopher, not only on April 19, 1944, but on December 27, 1943, when Christopher filed its petition for reorganization, and also on January 21, 1944, when the involuntary petition in bankruptcy against National was filed in Indiana. Unless it had such a status at the earlier dates, the fact that it became a subsidiary at the later date was insufficient under the applicable provisions of the Bankruptcy Act to confer jurisdiction upon the Missouri Court. These were jurisdictional facts, which of necessity must have been proved before the court in Missouri could possibly obtain jurisdiction of National, or oust the jurisdiction of the District Court in Indiana, and the burden was upon petitioners to establish those facts. This they did not do.

Appellants contend that National was a subsidiary of Christopher because the latter owned all of the former's capital stock having the power to vote for the election of directors. It is not denied that Christopher, or its trustee, received all such stock, if any, in its possession on April 19, 1944, from A. B. Christopher and J. M. Brown, who, prior to that time, held the majority stock in each corporation.

It is significant that the order of the court in Missouri does not state that Christopher owned any stock of National prior to April 19, 1944. Certainly Christopher, after its petition for reorganization had been approved and a trustee appointed for its estate, would not be permitted to purchase stock of another corporation without that court's permission, even for the purpose of acquiring a subsidiary. No such order appears to have been made. It would also seem passing strange, after National had been adjudicated a bankrupt, to permit its majority stockholders to transfer their stock to another corporation in order to effectively create a subsidiary for the purpose of taking a change of venue on the alleged subsidiary's petition for reorganiza-tion, and that too when its assets had been advertised for sale without any suggestion whatever to either the court or the debtor's trustee in Indiana that it desired a reorganization.

On first thought it might seem a captious interpretation of the Missouri court's order to limit the beginning of the subsidiary relationship to April 19, 1944. However, that is the date selected by that court and we must presume that there was no evidence before it that the relationship existed earlier. If there is any doubt that the court meant what it said in that order, we call attention to further facts before us which seem to fully confirm our interpretation of it. We do not discuss the facts about to be related for the purpose of showing that the court in Missouri erred in deciding the merits of the petition, but rather for the purpose of showing that it was without jurisdiction to enter such order. Of course, if it had jurisdiction, it had the right to decide the merits regardless of whether that decision was right or wrong.

Christopher's petition for reorganization states among other matters that "The financial condition of your petitioner is fully set forth in the balance sheet as of September 30, 1943 * * annexed hereto and made a part hereof." This was Christopher's last balance sheet and it makes no mention of the debtor's ownership or control of any stock in the National Company, although it purports to set forth a complete list of its assets and liabilities.

On February 25, 1944, J. M. Brown filed his petition under oath with the District Court of Missouri in the proceedings for the reorganization of Christopher. That petition alleged that Brown was the owner of 288½ shares of no par value stock of National; that on or about the 18th day of January, 1944, Duggan, trustee of Christopher, filed his petition for an order directing Brown and A. B. Christopher to forthwith endorse, deliver and surrender to Duggan, trustee, all of their stockholdings and stock certificates in National; that thereupon that court entered an order directing him to endorse, deliver and surrender his stockholdings to Duggan, trustee, the order further providing that the delivery of the stock, pursuant to the order, should not in any way affect Brown's claim thereto. The petition further alleged that at the time of the entry of that order, Brown was not in the possession of his stock above referred to, for the reason that he had on or about November 29, 1943,

endorsed and delivered his said stock to B. Sherman Landau as collateral security for a loan of $6,000 made by Landau to Brown. It was further alleged that Landau complied with the above order and turned over and delivered the shares to Duggan, trustee. The petition further stated that Brown was the absolute owner of the shares delivered by Landau, subject to the lien of Landau, and that Brown was entitled to immediate possession of them subject to Landau's lien. The petition prayed that the court enter its order finding that Brown was the sole owner of said shares of stock, subject only to Landau's lien, and that he was entitled to the possession of them, subject to that lien, and that Duggan, trustee, be directed to forthwith deliver them to Brown, subject to that lien.

B. Sherman Landau was attorney for J. M. Brown when the latter filed National's petition for reorganization in Missouri. He also filed a separate petition before the District Court in Missouri on February 25, 1944, in which he stated substantially the same facts as set forth in Brown's petition just mentioned.

On the same date A. B. Christopher also filed his petition in the same court and proceedings, alleging his ownership of 288½ shares of National's stock, which petition was substantially identical with Brown's petition, with the exception that his stock had not been pledged to any one as security. It asked for a return of the stock to himself.

It is significant that the affidavits of Brown and A. B. Christopher state that the trustee's petition for this order of transfer of stock was filed with the District Court in Missouri, and the order was entered on the very uncertain date of "on or about January 18, 1944." We are not informed as to whether the true date was before, on or after January 21, the date when the creditors of National filed their involuntary petition in bankruptcy. However, the order specifically provided that the delivery and surrender of such stock, endorsed by its then owners, would not in any way affect the endorsers' claims thereto. The record is silent as to when the stock was endorsed and delivered to Duggan, trustee, by either Brown, Landau or A. B. Christopher.

Furthermore, at the first meeting of National's creditors, on March 7, 1944, Brown was present and testified under oath. He said that National was originally organized with local capital at Elwood, Indiana, and that in December, 1942, he and A. B. Christopher purchased all of its capital stock; that while the certificates were turned over to Duggan, trustee of A. B. Christopher in a reorganization proceeding in St. Louis, there was no reason that he knew why such capital should be considered as the property of Christopher Company instead of himself and A. B. Christopher individually. When asked whether National was insolvent at that time, in the sense that the aggregate of its liabilities was in excess of its assets, he answered "It looks to me like it is insolvent, but I would not care to express myself." He then said that his stock in National was then in his name, and not in the name of Christopher Engineering Company, but that he had pledged it to Landau to secure a debt, putting up the stock as collateral. He made no objection to the appointment of a trustee for National.

Under these facts we are convinced that the District Court in Missouri, by its order of April 19, 1944, intended to limit the beginning of the subsidiary relation of National to that date, presumably when the stock was actually endorsed and delivered to Duggan, trustee.

As we construe the Bankruptcy Act, after a debtor has been adjudged a bankrupt or its petition for reorganization has been approved, and its property has been turned over to a trustee, its activities with respect to its property are extremely limited. We know of nothing it can do without permission of the court which has rightfully assumed jurisdiction. It is contended by appellants, however, that under section 529, after it has been adjudicated a bankrupt and its property transferred to a trustee, it may file a petition for reorganization in any district court where its parent corporation resides. We are convinced that this is not a proper interpretation of section 529.

Sub-Chapter IV of Chapter X deals with the petition for reorganization, including the right to file and the venue. 11 U.S.C.A. §§ 526–529. They should be construed together.[1]

---

[1] Section 526. "Filing petition; persons entitled

"A corporation, or three or more creditors (having claims aggregating $5000 or more, liquidated as to amount and not contingent as to liability) * * * may, if no other petition by or against such corporation is pending under this chap-

Section 526 merely provides that a corporate debtor or its creditors may file a petition for reorganization of such debtor, providing there is no pending petition for reorganization of the same debtor.

Section 527 provides that *if there is a bankruptcy proceeding pending* against the debtor corporation, and we take this to mean an insolvent debtor against or by whom no petition for reorganization has yet been filed, then and in that event such a petition may be filed in that proceeding, either before or after adjudication.

Section 528 provides that *if no bankruptcy proceeding is pending* against the debtor corporation, and we construe this is to refer to *any* bankruptcy proceeding, then and in that event an *original* petition may be filed with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets for the preceding six months.

If a corporation be a subsidiary, as provided in section 529, an *original* petition for reorganization may be filed by or against the debtor corporation as provided in section 528, or in the court which has approved the parent company's petition for reorganization.

It will be noted that section 528 deals only with estates where no bankruptcy proceeding of any kind is pending. In that event an *original* petition is permitted to be filed by the debtor or by its creditors. We interpret this to mean that the petition should be an original one, in the sense that no other petition in bankruptcy is pending in any jurisdiction with respect to the debtor's estate. No other interpretation has been suggested. Section 529 contains the same word presumably with the same intended meaning, otherwise the sentence would express an absurdity, because section 528 deals only with estates where no bankruptcy proceeding is pending with respect to such estate. Appellants contend that National was authorized and chose to file

its alleged petition under section 529 rather than section 528. However, it is clear there was no authority to choose nor was a choice of jurisdiction made, for National could not then have filed under section 528, because there was then pending in Indiana an involuntary proceeding in bankruptcy against it; and for the further reason that its alleged petition for reorganization in Missouri was not an *original* one as required by both sections 528 and 529.

The cited sections of the statute seem to fully cover every conceivable contingency pertaining to the venue of a petition for reorganization of a corporation, and we think our interpretation of them gives full force to each phrase and clause thereof. It is apparent that appellants' interpretation does not do this. True, section 529 does not contain the words found in section 528—"If no bankruptcy proceeding is pending." However, we think the substance of this limitation is contained in section 529, by the requirement that the petition shall be an original one. Such construction gives full effect to every word of the Act, and expresses what we consider the clear intention of Congress.

Moreover, section 529 was not available to either the alleged parent company or its stockholders, or to the stockholders of National, although they seem to have actuated these issues. It was available only to National, because it was the alleged petitioner. National's name, of course, appears as a signature to the petition, but it was placed there by Brown, not as a director, nor as a stockholder, nor as any other officer of National, but as "Petitioner." In that petition he does not claim to be a stockholder, nor an agent authorized by National, nor by the District Court of Southern Indiana, to sign or file it. True, in the jurat of the petition he says he is Secretary of National, but he nowhere states or claims that he had authority to file the petition by reason of that fact. Moreover, at the time the District Court in

---

ter, file a petition under this chapter."

Section 527. "Same; pending bankruptcy proceeding

"A petition may be filed in a pending bankruptcy proceeding either before or after the adjudication of a corporation."

Section 528. "Same; original petition

"If no bankruptcy proceeding is pending, an original petition may be filed with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal

assets for the preceding six months or for a longer portion of the preceding six months than in any other jurisdiction."

Section 529. "Same; subsidiary corporation

"If a corporation be a subsidiary, an original petition by or against it may be filed either as provided in section 528 of this title or in the court which has approved the petition by or against its parent corporation."

Missouri sought to assume jurisdiction of the petition, and oust the District Court of Indiana of its jurisdiction, and enjoined its referee and other officers from further proceedings in this matter, there were pending in the court in Missouri, the claims under oath of Brown, and A. B. Christopher, asserting sole ownership and the right to possession of the 577 shares of National's stock, which had been endorsed and delivered to Duggan, trustee in Missouri, with the understanding that such endorsement and delivery would not in any way affect the endorsers' claims thereto. It is not here denied that this is the alleged transfer of stock upon which appellants rely to establish the subsidiary relationship of National. It seems to us that one of two things is true, and in either case the court in Missouri had no authority to assume jurisdiction of National. If Christopher did not become the rightful owner of this stock by such transfer, then National did not become its subsidiary, and was not authorized to file its alleged petition. On the other hand, if this stock was in good faith actually endorsed and delivered and the ownership transferred to Duggan, trustee, then Brown had no authority, disclosed by this evidence, to file National's petition for reorganization.

Under the facts presented by this record, we are convinced that appellee, an officer appointed by the District Court of Indiana and acting under its orders, had no reason to disregard those orders and obey the orders of the Missouri court which acted without statutory authority in entering such orders.

The order is affirmed.

MAJOR, Circuit Judge (concurring).

I concur in the view that the order appealed from should be affirmed. As pointed out by Judge Sparks, the District Court of Indiana properly acquired jurisdiction of National and concededly retained such jurisdiction until April 19, 1944. If the Indiana court lost jurisdiction at that or any subsequent time, it was because of the alleged filing by National of its petition for reorganization in the St. Louis court under Sec. 529, relating to a subsidiary corporation. The burden rested upon appellant to show that National was a subsidiary of Christopher on December 27, 1943, when Christopher filed its petition for reorganization in that court. Appellant failed to carry the burden in this respect. The most that the finding of the St. Louis court

discloses is that National was a subsidiary on April 19, 1944. For aught that the record of that court discloses, National might have become a subsidiary just prior to the entry of that order. A showing based upon such a finding did not deprive the Indiana court of jurisdiction; in fact, it had no right to relinquish jurisdiction. It therefore appears to me as being unnecessary to decide whether the Indiana court would have lost jurisdiction had there been a showing that National was a subsidiary of Christopher at the time the latter's petition for reorganization was filed in the St. Louis court.

BRIGGLE, District Judge (dissenting).

The question for decision here is of much broader import than the mere determination of the propriety of the sale of assets of a bankrupt and involves, as the opinion of the Court states, a question of conflicting jurisdiction between two District Courts. The opinion holds that the Missouri Court was without jurisdiction, under the facts disclosed, to receive National Aircraft Corporation on April 19, 1944, for reorganization in the proceedings then pending in the Missouri Court for reorganization of the Christopher Engineering Company, alleged to be the parent company. This conclusion seems to be bottomed upon two principal bases: 1. That National failed to establish in the Missouri Court that it was a subsidiary of Christopher within the meaning of the Bankruptcy Act, and, 2. That in any event National being involved in liquidation proceedings in the Indiana Court is without legal authority to petition for reorganization in the Missouri Court. I cannot subscribe to either proposition.

*First.* Whether National was a subsidiary of Christopher is a fact question never an issue in the Indiana Court, but a question properly before the Missouri Court. Stock ownership in National never became important in the liquidation proceedings in Indiana, as it early became obvious that upon liquidation there would be insufficient assets to pay creditors. Upon the filing of National's petition in Missouri, however, the question of stock ownership immediately became an issue. I, therefore, look no further on this question than the findings and order of the Missouri Court. On National's petition for intervention and reorganization that Court found: "That the National Aircraft Corporation is a wholly owned subsidiary of the Christopher En-

gineering Company, a corporation, the principal debtor herein, and is entitled to file its petition in these proceedings of its parent company. * * * That said petition of National Aircraft Corporation complies with the requirements of Chapter Ten of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. That said petition * * * has been filed in good faith." Upon these and other findings the Missouri Court proceeded to approve the petition, entered upon the process of reorganization, and among other things enjoined the sale of National's assets in Indiana. The record does not disclose upon what evidence the Missouri Court acted and with that I think we are not concerned. The findings are sufficiently broad to support the Court's conclusion of law that National had complied with the Act. The opinion is pregnant with a recital of facts reflecting upon the integrity of the findings of the Missouri Court, all of which I respectfully submit are irrelevant in the consideration of the questions before us. If the Missouri Court acted improvidently or reached erroneous conclusions of fact or law that was a matter to be challenged by direct appeal and not a matter for collateral consideration by the Indiana Court or by this Court. It is my judgment that we must give full faith to the findings and order of the Missouri Court.

*Second.* The framers of the 1938 revision of the Bankruptcy Act (commonly called the Chandler Act) had many objectives, not least of which was the reconstruction of failing businesses and avoidance of the drastic deflationary effect of liquidation upon the public economy as a whole. It cannot be denied but that it was the intention to lay the framework for rehabilitation where possible rather than liquidation. See commentary on Chandler Act, 11 U.S.C.A., preceding section 201. With this in mind it is pertinent to note certain sections of Chapter 10 dealing with corporate reorganizations. Section 126 of the Act, 11 U.S.C.A. § 526, provides for the filing of a petition for reorganization by the corporation (or creditors under some circumstances) where no other petition by or against such corporation is pending under Chapter 10. It is to be noted that a "petition" *means a petition under Chapter 10.* See Section 106 (9), 11 U.S.C.A. § 506. Section 127 of the Act, 11 U.S.C.A. § 527, then provides that a petition may be filed in a pending bankruptcy proceeding either be-

fore or after adjudication. The pending proceeding of course refers to proceedings under the liquidation provisions and not the reorganization provisions. Section 128, 11 U.S.C.A. § 528, provides for the filing of an *original* petition for reorganization where no bankruptcy proceedings are pending, in the territorial jurisdiction of a court where the corporation has had its principal place of business or principal assets for the major part of the preceding six months. Section 129, 11 U.S.C.A. § 529, provides that if a corporation be a subsidiary an original petition may be filed by or against it as provided in Section 128 or *in the Court which has approved the petition by or against its parent corporation.*

Assuming that National was in fact a subsidiary of Christopher as the Missouri Court has found, we find that the facts of our case fit perfectly into the legislative scheme as exemplified in the Chandler Act. The Missouri Court had in December, 1943, taken jurisdiction of Christopher, the parent corporation, for reorganization. National, the subsidiary, on April 19, 1944, under Section 129, intervened and asked for reorganization with its parent. That certain creditors of National had in January, 1944, invoked the jurisdiction of the Indiana Court for liquidation of National is of no moment—indeed the Act expressly contemplates that reorganization proceedings may be invoked in behalf of a corporation already in bankruptcy and following adjudication. This right seems to be unconditional and not limited as to time. The reorganization proceedings could, under Section 127 have been had in the Indiana Court; they could, under Section 129, have been had in either the Indiana Court or the Missouri Court. National, being under no compulsion or restraint in this respect, elected to file in Missouri. The Missouri Court, upon assuming jurisdiction of National, was bound, if reorganization of National was to be more than a mere gesture, to take immediate steps to preserve its assets. The usual concepts of comity between courts have no application to such a situation; neither can it be said that concurrent jurisdiction exists under such circumstances between the liquidating court and the reorganization court, inviting application of General Order 6, 11 U.S.C.A. following section 53. Neither does Section 32 of the Act, 11 U.S.C.A. § 55, dealing with instances where petitions have been filed in two different courts, have any

application under the facts here. We are concerned here with but one liquidation proceeding and one reorganization proceeding. The former in Indiana, the latter in Missouri.

The spirit and purpose of the reorganization provisions of the Act would be thwarted if the Indiana Court were to be permitted to review the findings of the Missouri Court—and this follows even though, as here, the Indiana Court had jurisdiction of National under the general bankruptcy section of the Act and was proceeding in good faith in its liquidation. Ordinary bankruptcy contemplates sale of assets and liquidation for the benefit of creditors, while the reorganization provisions of Chapter 10 head in directly the opposite direction and contemplate preservation of assets, even to the extent of returning them to the debtor under some circumstances. Congress was diligent in its undertaking to give the reorganization Court a free hand. Section 111 of the Act, 11 U.S.C.A. § 511, provides for exclusive jurisdiction; Section 113, 11 U.S.C.A. § 513, clothes the reorganization court with power to stay all other proceedings concerning debtor; Section 148, 11 U.S.C.A. § 548, makes the order approving the petition an automatic stay of other proceedings, including a pending bankruptcy and Section 149, 11 U.S.C.A. § 549, provides that when such order shall become final it shall constitute a conclusive determination of jurisdiction. See In re Park Beach Hotel, 7 Cir., 96 F.2d 886; In re Maier Brewing Co., D.C., 38 F.Supp. 806.

The wisdom of permitting a subsidiary corporation, whose principal place of business and assets are located in Indiana, to intervene in the court having jurisdiction for reorganization of its parent company is not before us; that has, as I think, been clearly determined by Congress. The challenge that the petition of the subsidiary may have been conceived in iniquity and founded upon fraud is, likewise, not before us. We are not reviewing the findings of the Missouri court which has found to the contrary and which has, by its orders, sought to gain control of the assets of the subsidiary. We are only called upon to review the propriety of an order approving the sale of assets of the subsidiary in Indiana, where such sale had been enjoined by the Missouri court. Under such circumstances I think our duty is not in doubt. The jurisdiction of the Missouri court for purposes of reorganization is paramount and cannot here be challenged. Indiana must, in my judgment, yield to Missouri.