DUGGAN, TRUSTEE, *v.* SANSBERRY, TRUSTEE.

NO. 418.

Argued February 6, 1946.—Decided March 4, 1946.

500

*Geo. O. Durham* argued the cause for petitioners. With him on the brief were *Luke E. Hart* and *Noah Weinstein.*

*Isidore Feibleman* and *Charles B. Feibleman* argued the cause for respondent. With them on the brief was *Ralph Bamberger.*

Opinion of the Court by Mr. Justice Rutledge, announced by Mr. Justice Murphy.

These cases involve, as the Circuit Court of Appeals said, 149 F. 2d 548, "a clash of jurisdiction" between two District Courts. They raise important questions as to the construction of certain sections of Chapter X of the Bankruptcy Act, 11 U. S. C. § 501 *et seq.* Two corporations, Christopher Engineering Company and National Aircraft

Corporation, are concerned, as is the question of their relationship as parent and subsidiary corporations.

On December 27, 1943, Christopher Engineering Company filed a petition for reorganization under Chapter X in the District Court for the Eastern Division of the Eastern Judicial District of Missouri. On the same day the petition was approved as properly filed and petitioner Duggan was appointed trustee. Approximately a month later, January 21, 1944, an involuntary petition in ordinary bankruptcy was filed by its creditors against National Aircraft Corporation, which petitioner Duggan claims was a subsidiary of Christopher, in the District Court for the Southern District of Indiana.[1] A petition for the appointment of a receiver in bankruptcy for National was filed and referred to a referee who took the matter under advisement after holding a hearing at which Duggan, as trustee of Christopher, appeared by his attorney. On February 7, 1944, the involuntary petition being unopposed, the referee entered an order of adjudication, and the following day appointed respondent Sansberry as receiver. On March 7, 1944, the first meeting of National's creditors was held. At that meeting Brown, its secretary-treasurer, testified that in December, 1942, he and A. B. Christopher[2] had purchased all the capital stock of National and that, although the certificates had been turned over to Duggan, "there is no reason that he [Brown] knows of why such capital stock should be considered as the property of Christopher Engineering Company instead of the property of himself and Christopher, individ-

---

[1] On January 19, 1944, an Indiana state court appointed a receiver for National. The receiver never qualified, however, the qualification having been delayed because of a restraining order entered by the District Judge in the Christopher reorganization proceedings.

[2] A. B. Christopher was president of the Christopher Engineering Company and Brown was vice president of the same company.

ually." At this meeting also the receiver Sansberry was selected as trustee in bankruptcy for National.

On March 21, 1944, Sansberry, acting as trustee, filed a petition for an order authorizing him to offer for sale and to sell the tangible personal property and the real estate belonging to National. The referee ordered that a meeting of creditors be held to consider this petition. Notice of the meeting was sent to Duggan and also to the attorneys for Brown. The meeting was held on April 4, 1944. Neither Duggan nor Brown appeared. No objection to the proposed sale was made except by the United States Army Air Force, which claimed certain personal property. But it was expressly stated on its behalf that there was no objection to the entering of an order for the sale covering any other property of National. On April 6 the referee entered an order directing that the real and personal property of National, with certain exceptions, be offered for public sale on April 20, 1944. Notice of the sale was sent to Duggan and Brown among others.

On April 19, the day prior to the sale, a petition was filed on behalf of National in the reorganization proceedings of Christopher in the Missouri District Court.[3] On the same day that court issued an injunction against holding the sale of National's property. The decree contained a finding that National is a wholly owned subsidiary of the Christopher Engineering Company.

Immediately preceding the sale on April 20, copies of the injunction order were served upon Sansberry and the auctioneer; but they proceeded with the sale. On May 3, after the trustee had filed his report to the effect that the

---

[3] The petition was signed "National Aircraft Corporation, a corporation, By J. M. Brown, Petitioner." It recited that "the majority of the capital stock of this subsidiary corporation having power to vote for the election of directors is owned directly by the debtor or indirectly through nominees."

sale had been advantageous and after a hearing had been held, the referee approved and confirmed the sale. He then granted petitions for review of this order which were filed by Duggan and by the National Aircraft Corporation per Brown.[4] The District Court affirmed the referee's order, as did the Circuit Court of Appeals, one judge concurring specially and one dissenting. 149 F. 2d 548. We granted certiorari. 326 U. S. 709.

The Circuit Court of Appeals held, in the first place, that for the District Court in Missouri to obtain jurisdiction over National and its assets, it had to be established as a "jurisdictional fact" that "National was a subsidiary of Christopher, not only on April 19, 1944, but on December 27, 1943, when Christopher filed its petition for reorganization, and also on January 21, 1944, when the involuntary petition in bankruptcy against National was filed [in the District Court] in Indiana." This fact, the court found,

---

[4] In granting the petitions for review, the referee noted that "neither petition was in duplicate as required by Rule 19 of the Rules of the District Court of the United States for the Southern District of Indiana, and neither petition was accompanied by brief as required by said Rule." He also noted that copies of the petitions had not been served upon the trustee, as required by the provisions of § 39 (c) of the Bankruptcy Act, 11 U. S. C. § 67 (c). He stated: "It seems obvious that the failure of the petitioners for review to comply with the Rules of Court and the provisions of the Bankruptcy Act in respect to the filing of such petitions would justify the denial thereof. In order, however, to resolve all doubts in favor of the petitioners and so that the matter may be presented to the Judge of the United States District Court for the Southern District of Indiana, the Referee finds that said petition should be granted." The referee's granting of the petitions, despite petitioners' failure to comply with § 39 (c), appears to be justified because the record indicates that the trustee waived service. It has been said that the requirement of service is not jurisdictional. 2 Collier, Bankruptcy (14th ed.) § 39.24, n. 15.

The referee denied petitions for a stay of enforcement of the order approving and confirming the sale. No appeal was taken from the order of denial.

had not been established; for the order of the Missouri court did not state that Christopher owned any stock of National prior to April 19, 1944; and, as April 19 was the date as of which the Missouri court's determination was effective, "we must presume that there was no evidence before it that the relationship existed earlier." 149 F. 2d at 550.

In the second place, the Court of Appeals held that under Chapter X, when a subsidiary corporation has been adjudicated a bankrupt in one District Court and its property is transferred to a trustee, it may not file a petition for reorganization in another District Court where the reorganization proceeding of its parent is pending.[5] And finally the court held that the petition for reorganization was improperly filed in any case, since it was not shown that Brown was authorized to file it.

We come to different conclusions. Regardless of whether National's petition for reorganization in the Missouri proceedings was properly filed on April 19, the Indiana court, on being notified that the petition had been filed and approved[6] and that an injunction had issued, should have stayed immediately the sale of National's assets. Section 113, 11 U. S. C. § 513, provides with respect to reorganization proceedings: "Prior to the approval of a petition, the judge may upon cause shown grant a temporary stay, until the petition is approved or dismissed, of a prior pending bankruptcy, mortgage foreclosure or equity receivership proceeding and of any act or other proceeding to enforce a lien against a debtor's property, and may upon cause shown enjoin or stay until

---

[5] See 149 F. 2d at 551–552 for the court's construction of the statute which led it to this conclusion, and compare the dissenting opinion, 149 F. 2d at 553, for a different construction.

[6] The petition was approved on the same day that it was filed. See notes 7 and 11.

the petition is approved or dismissed the commencement or continuation of a suit against a debtor." It was on the authority of this section, we may assume,[7] that the injunction staying the sale of National's property was issued. As interpreted [8] the section declares that when a petition for reorganization has been filed by a corporation, the judge may stay pending proceedings. It does not differentiate between petitions filed by parent corporations and petitions filed by subsidiaries, nor does it distinguish petitions which have been filed correctly from those which have been filed erroneously with the reorganization court. It thus applies to National, whose petition for reorganization had been filed and against which a bankruptcy proceeding was pending.

Opportunity was afforded to interested parties to come into the reorganization proceeding in order to show that National's petition should not have been approved. See

[7] For the purposes of this case it is not necessary to decide whether the applicable section is § 113 or § 148, and we therefore expressly reserve that question.

Section 148 provides: "Until otherwise ordered by the judge, an order approving a petition shall operate as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receivership proceeding, and of any act or other proceeding to enforce a lien against the debtor's property." It might be urged that this section would apply since the petition had been "approved" in the sense of § 141, 11 U. S. C. § 541, which provides: "Upon the filing of a petition by a debtor, the judge shall enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith, or dismissing it if not so satisfied"; and that therefore, under § 148, the bankruptcy proceeding was automatically stayed and it was unnecessary for the injunction to issue.

The alternative view would be that the meaning of "approve" as used in §§ 113 and 148 is not the *ex parte* approval given immediately upon the filing of a petition under § 141 but the approval given after adversary proceedings under § 144, 11 U. S. C. § 544. See note 11 and text.

[8] See note 7.

§ 137, 11 U. S. C. § 537, which provides: "Prior to the first date set for the hearing provided in section 561 of this title,[9] an answer controverting the allegations of a petition by or against a debtor may be filed by any creditor or indenture trustee or, if the debtor is not insolvent,[10] by any stockholder of the debtor."   And § 144, 11 U. S. C. § 544, provides, "If an answer filed by any creditor, indenture trustee, or stockholder shall controvert any of the material allegations of the petition, the judge shall, as soon as may be, determine, without the intervention of a jury, the issues presented by the pleadings and enter an order approving the petition, if satisfied that it complies with the requirements of this chapter and has been filed in good faith and that the material allegations are sustained by the proofs, or dismissing it if not so satisfied."[11]   Thus, under §§ 137

---

[9] Section 161, 11 U. S. C. § 561, reads: "The judge shall fix a time of hearing, to be held not less than thirty days and not more than sixty days after the approval of the petition, of which hearing at least thirty days' notice shall be given by mail to the creditors, stockholders, indenture trustees, the Securities and Exchange Commission and such other persons as the judge may designate, and, if directed by the judge, by publication in such newspaper or newspapers of general circulation as the judge may designate."

In connection with § 161, see § 162, 11 U. S. C. § 562.

[10] National's petition for reorganization alleged: "This subsidiary corporation is unable to meet its debts as they mature . . . ."

[11] Under this section the District Court, if satisfied that the petition complies with the requirements of Chapter X and has been filed in good faith and that the material allegations are sustained by the proofs, may be approving the petition *for the second time;* for, as in the present case, he may have approved it in accordance with § 141, 11 U. S. C. § 541, for the first time at the time the petition was filed.   See 10 Remington, Bankruptcy (1939) § 4466.   Cf. note 7.

The order of approval under § 141, which consists of "first, a conclusion of law to the effect that the petition is sufficient in respect of its allegations, second, a finding of fact that the petition is filed in good faith," 10 Remington § 4453, having been made *ex parte,* is of course not conclusive.   See note 7.   See also the testimony of Mr.

and 144, an answer could be filed to National's petition, denying that National was a subsidiary of Christopher, and asking that the petition be dismissed. The judge would then be obliged to hold at least a summary hearing, see *In re Cheney Bros.*, 12 F. Supp. 609, 611,[12] a material allegation being controverted, and to decide the disputed issue on its merits.

In as much as the interested parties thus had an opportunity in the reorganization proceeding to dispute the allegation of National's petition that a parent-subsidiary relationship existed between it and Christopher and by doing so to have that issue determined on the facts, we

Harold Remington in Hearings before the Committee on the Judiciary of the House of Representatives on H. R. 6439, subsequently reported as H. R. 8046, 75th Cong., 1st Sess., 226–227. And see Gerdes, Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act (1938) 52 Harv. L. Rev. 1, 7, n. 38, for a suggestion that the time within which answers to the petition may be filed cannot be fixed until an order approving the petition, under § 141, has been entered. If this be the case, it would seem that a judge could not avoid this problem of double approval by not approving the petition until an answer had been received.

[12] Cf. Gerdes, Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act (1938) 52 Harv. L. Rev. 1, 7: "The statute contains no mandatory provision requiring notice of the hearing on the issues raised by an answer to be given to all creditors and stockholders entitled to controvert the allegations of the petition. If such notice is given, a determination of any issue tried at the hearing becomes conclusive [citing § 145, 11 U. S. C. § 545]. In the absence of such notice, recurrent trials of the same issues may be necessary. Once an order approving the petition has been entered, however, it may be possible to avoid the expense of giving notice to all creditors and stockholders and also avoid repeated trials by postponing the hearings until after the time to file answers has expired, and then trying all of such issues at the same time." Cf. also 10 Remington, Bankruptcy (1939) § 4466: "The possibility of successive orders of approval is probably more formal and theoretical than substantial and real, since the hearing upon all answers filed by creditors, indenture trustees and stockholders would probably be consolidated."

think it plain that Congress intended that the same issue should not be tried collaterally in the bankruptcy proceeding.[13]

But respondent relies especially upon § 149, 11 U. S. C. § 549, as allowing a collateral attack in the bankruptcy court upon the reorganization proceedings initiated by National. This section reads: "An order, which has become final, approving a petition filed under this chapter shall be a conclusive determination of the jurisdiction of the court." Respondent's position is that the Missouri District Court's approval of the petition upon its filing was not an order which had become final and that as a result the reorganization proceedings thereby initiated by National were subject to question in the bankruptcy forum.

Assuming arguendo that the *ex parte* order of approval, made upon the day the petition for reorganization was filed, was not a final order [14] and assuming also that, as respondent argues, "jurisdiction" within the meaning of this

---

[13] It might be argued that if the Circuit Court of Appeals was correct in holding that for the Missouri District Court to obtain jurisdiction over National it was necessary that National be a subsidiary of Christopher, not only on the date when National filed its petition for reorganization, but also when Christopher filed its petition and when the involuntary petition in bankruptcy was filed against National, then interested parties would not have an opportunity to controvert a material allegation of the petition, namely, that such a parent-subsidiary relationship did exist on those dates, since the petition contained no such explicit statement. The answer would be, however, that the interested parties, first, could contend that such an allegation was required as a jurisdictional fact, see § 130 (2), 11 U. S. C. § 530 (2), and, second, if the mere general statement of the parent-subsidiary relationship were to be taken to satisfy the requirement, if any, that it also existed on the prior dates, they could raise in answer to the petition that it did not exist on those dates. It would then be for the reorganization court to determine the correctness of either contention or both.

[14] S. Rep. 1916, 75th Cong., 3d Sess., 27, says that § 149 "is designed to foreclose all direct or collateral attack upon jurisdiction or venue, once the period for appeal from an order approving a petition has

section does not have the limited meaning of "venue," the section nevertheless does not support the position taken. Congress in § 113, 11 U. S. C. § 513, explicitly provided that a reorganization court, upon the filing of a petition, could stay pending bankruptcy proceedings.[15] In the light of this provision it is scarcely possible that Congress also intended that a collateral attack could be made in the bankruptcy forum, the proceedings in which had been stayed,[16] upon the proceedings in the reorganization forum.

But it is said that if this be the case, then § 149 has no meaning at all. We do not think this conclusion follows. Although, as we construe the Act, no collateral attack may be brought against the reorganization proceedings, at least in a bankruptcy forum the proceedings in which the re-organization court has stayed, this does not mean that under other circumstances, where an order of approval is not final, § 149 would not allow the reorganization pro-ceeding to be attacked collaterally in some other forum, in particular where "a prior . . . bankruptcy, mortgage fore-closure or equity receivership proceeding [or] . . . any act or other proceeding to enforce a lien against a debtor's property," § 113, 11 U. S. C. § 513, is not pending. More-over, had the Missouri District Court not enjoined the bankruptcy proceeding, we may assume [17] that the bank-ruptcy court would have been correct in not ordering the sale of the assets of National halted.

---

expired." See for a discussion of the meaning of "final," Gerdes, Cor-porate Reorganizations: Changes Effected by Chapter X of the Bank-ruptcy Act (1938) 52 Harv. L. Rev. 1, 7–8.

[15] See note 7 and text.

[16] Although the Missouri District Court enjoined only the sale, this was in effect an injunction against the entire bankruptcy proceedings. See *In re Long Island Properties,* 42 F. Supp. 323, to the effect that a judgment rendered by a state court in violation of a stay order that had been issued by a reorganization court was without effect in the reorganization.

[17] See note 14 and text; also note 7.

510

The problem involves, of course, not the ordinary power of one court of general jurisdiction to question the jurisdiction of another court of general jurisdiction. The jurisdiction of both the bankruptcy forum and the reorganization forum is derived from and is limited by the Bankruptcy Act, enacted in accordance with the congressional power "to establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ." Constitution, Article I, § 8. It was within the power of Congress to provide that a bankruptcy court could not permit an attack, even on the usual grounds, to be made upon proceedings initiated in a reorganization court.[18] This power Congress exercised by permitting the reorganization court to stay, as it did,[19] the bankruptcy proceedings.

The exercise of this power, taken in relation to the facts at bar, was in pursuance of the congressional intention ordinarily to allow parent and subsidiary to be reorganized in a single proceeding,[20] thereby effectuating its gen-

[18] In *Kalb* v. *Feuerstein*, 308 U. S. 433, 438–439, what is almost the converse was stated: "It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally."

[19] See note 16.

[20] At the Hearings on the Chandler Act Mr. Weinstein stated: "It is advisable that the court which is considering the proceeding of a parent corporation should also have before it the proceeding of the subsidiary, because there may be these interrelations and these connected interests, and the plans of reorganization offered by them, respectively, may be carried forward concurrently." Hearings before the Committee on the Judiciary, House of Representatives, on H. R. 6439, subsequently reported as H. R. 8046, 75th Cong., 1st Sess., 136. See H. Rep. 1409, 75th Cong., 1st Sess., 41; S. Rep. 1916, 75th Cong.,

eral policy that the entire administration of an estate should be centralized in a single reorganization court.[21] If the reorganization forum lacked the power to stay the bankruptcy proceeding and thereby to prevent a collateral inquiry into its own jurisdiction, this policy of Congress would be frustrated; for instead of one court's having "exclusive jurisdiction of the debtor and its property, wherever located," [22] there would be two courts each with a claim to jurisdiction and each denying the other's jurisdiction. We may not construe the Bankruptcy Act as permitting such a state of affairs.

In view of the disposition we make of the cause it is unnecessary to take specific action concerning petitioners' motion, submitted in their reply brief, relating to certain matters affecting the state of the record.

The judgments are reversed and the causes are remanded for further proceedings in conformity with this opinion.

MR. JUSTICE JACKSON took no part in the consideration or decision of these cases.

---

3d Sess., 25. Cf. *In re Associated Gas & Electric Co.,* 11 F. Supp. 359, 373–374, a § 77B case, holding that although subsidiary corporations had not filed petitions in the parent's reorganization, "It does not follow, however, that the court has no jurisdiction to restrain subsidiaries over whose action the debtor company has control, from so dealing with their assets as to dilute the equity of the debtor company and thus to endanger the interests of creditors on whose behalf the jurisdiction of the court was invoked."

[21] See *Mar-Tex Realization Corp.* v. *Wolfson,* 145 F. 2d 360, 362–363.

[22] § 111, 11 U. S. C. § 511. This section reads in full: "Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

Section 118, 11 U. S. C. § 518, provides, however: "The judge may transfer a proceeding under this chapter to a court of bankruptcy in any other district, regardless of the location of the principal assets of the debtor or its principal place of business, if the interests of the parties will be best served by such transfer."