In re W. F. HURLEY, INC., Debtor.

W. K. INGRAM, Trustee, Appellee,

v.

MARTRAC FARMS, INC., et al., Appellants.

No. 76-1234.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1976.

Decided April 7, 1977.

As Amended on Denial of Rehearing May 6, 1976.

Daniel R. Elkins, Baytown, Tex., for appellants.

Ben F. Arnold, Little Rock, Ark., for appellee.

Before STEPHENSON, WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This bankruptcy appeal comes to us from the United States District Court for the Eastern District of Arkansas, Northern Division [1] and involves a conflict of jurisdiction between that court, sitting in bankruptcy, and the United States District Court for the Southern District of Texas, Houston Division, also sitting in bankruptcy.

Eight Arkansas corporations, hereinafter referred to as the Hurley companies or simply as Hurley, are in the process of reorganization in the Arkansas court in consolidated proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501 *et seq.* All of those corporations are subsidiaries of

---

1. The Honorable Terry L. Shell, United States District Judge.

a Texas corporation, Martrac Farms, Inc., which is a debtor in possession in an arrangement proceeding that is being conducted in the Texas court under Chapter XI of the Act, 11 U.S.C. §§ 701 *et seq.* The proceedings in Arkansas and the proceeding in Texas have been referred generally to the bankruptcy judges of the respective district courts.

The Arkansas proceedings were in fact commenced in the Texas court as Chapter XI proceedings along with the Chapter XI proceeding commenced by Martrac. However, in June, 1975 the Texas bankruptcy judge after hearing determined that the cases of the Hurley companies should be transferred to Arkansas. They were transferred, and after the transfer they were consolidated with each other and with three other Chapter XI proceedings which had been commenced in Arkansas and which involved three of the Hurley companies.

The Arkansas bankruptcy court appointed W. K. Ingram receiver of the Hurley companies and also directed that those companies furnish within a limited time an indemnity bond in the sum of $1,000,000.00 as a condition to being permitted to continue to seek arrangements under Chapter XI. The companies were not able to furnish the bond, and in July, 1975 the proceedings were voluntarily converted into reorganization proceedings under Chapter X. Those proceedings are now pending in Arkansas, and Martrac's Chapter XI proceeding is now pending in Texas. As stated, Martrac occupies the status of a debtor in possession in the Chapter XI case, and is largely under the control of its president and sole or principal stockholder, Alvin Charles Sue.

After the Arkansas proceedings were converted into reorganization proceedings under Chapter X, Mr. Ingram, who has been mentioned, was appointed trustee in reorganization and is acting as such at this time.

Prior to the commencement of the overall proceedings the Hurley companies, with one exception, were engaged in the business of farming or in operations closely related to farming. Considered collectively, they owned several thousand acres of farm land, including the Denton Farm and the Otter Lake Farm, together with agricultural machinery and equipment; they also owned and operated such facilities as cotton gins and elevators or warehouses for the storage of such agricultural products as soy beans and rice. Some of the companies were also engaged in the buying and selling of agricultural commodities.

The duties of Mr. Ingram, first as receiver and later as trustee, involved his taking over the assets of the companies, leasing the farm lands for 1976, ascertaining the debts owed by the companies, collecting moneys that were due to them, and formulating ultimately a plan for the reorganization of the companies which would meet with the approval of the Arkansas court and of the requisite number of the creditors of the debtor corporations.

By mid-December, 1975 the Trustee had arranged tentatively for the leasing of all of the farms, including the Denton Farm and the Otter Lake Farm, to a single lessee for a basic cash rent of $500,000.00. The trustee had also worked out a reorganization plan which involved, among other things, a sale of all of the farm lands to a corporation formed by foreign investors for a price of $7,900,000.00, with the sale to be closed not later than the spring and early summer of 1976. The plan involved the elimination of Martrac's stock ownership in the Hurley companies.

The trustee's proposed lease and the plan were noticed for hearing before the bankruptcy judge on January 19, 1976. The plan was opposed by Martrac. At the end of the first day of the hearings, they were adjourned at the instance of the bankruptcy judge but later were scheduled to be resumed on February 2.

For a period of several months prior to January 19, 1976 the trustee and Martrac had been engaged in a number of controversies. Those controversies involved ownership of the Denton Farm and of stock in Denton Brothers, Inc., one of the Hurley companies, leasehold rights of Martrac with respect to the Otter Lake Farm, the rights

of the trustee to sell certain items of personal property, the status of accounts between Martrac on one hand and the respective Hurley corporations on the other hand, and the plan itself which Martrac claimed had an unduly adverse effect upon it and upon its own creditors who were involved in the Chapter XI proceeding.

Between September 8, 1975 and about January 19, 1976 Martrac commenced five "adversary proceedings" in the Texas court which were designed to have the controversies that have been mentioned adjudicated in that court although the Arkansas court was fully competent to adjudicate them. And although the Texas bankruptcy judge was aware of the Chapter X proceedings that were pending in Arkansas and was aware that the trustee was contesting the jurisdiction of the Texas court, that court granted certain preliminary relief against the trustee with some of it being granted ex parte and without notice. That relief included two show cause orders against the trustee that were made returnable on January 26, 1976.

On January 21, 1976 the trustee filed a petition in the Arkansas court seeking a preliminary and permanent injunction restraining the Texas bankruptcy court from taking further actions in the proceedings that have been mentioned. The trustee claimed that such relief was necessary to protect the jurisdiction of the Chapter X court and to protect the trustee from interference and harassment resulting from continuing proceedings in the Texas court which affected the Arkansas corporations, their assets and the plan of reorganization which the trustee had formulated.

Since the trustee sought to enjoin the Texas court itself rather than litigants therein, the petition was addressed to District Judge Terry L. Shell who presides over the Northern Division of the Eastern District of Arkansas rather than to Bankruptcy Judge Charles W. Baker to whom the proceedings had been referred. *See* 11 U.S.C. § 11(a)(15).

The trustee noticed his petition for a preliminary injunction for hearing on January 22, 1976 and served notices on a number of respondents, including Martrac and Sue. The hearing was held as scheduled; Martrac and Sue appeared by counsel and participated in the hearing resisting the trustee's petition. A number of other interested parties also appeared.

On the date of the hearing counsel for trustee learned that earlier in the day Martrac had filed a sixth proceeding in the Texas court which was denominated a motion for venue determination and was purportedly based on Bankruptcy Rule 10–114(c). The object of that motion was to have the Texas court transfer the Chapter X cases back to Texas where they had been commenced as Chapter XI cases.

Although no testimony was taken at the hearing, it consumed several hours; it consisted mainly of arguments, statements and discussions between court and counsel. The matter was finally submitted on copies of pertinent documents that had been filed in Texas and the voluminous record that had been assembled in the Arkansas court.

On January 23, 1976 Judge Shell filed detailed findings of fact and conclusions of law and granted the preliminary injunction sought by the trustee. The operative part of his order was as follows:

NOW THEREFORE, this Court does hereby enter its preliminary injunction until further order of this Court, enjoining the Bankruptcy Court in the United States District Court for the Southern District of Texas, Houston Division, from taking any action or hearing any proceedings or issuing any orders which touch upon any of the rights, duties, obligations or activities of the Debtor Corporations consolidated in this cause and known as W. F. HURLEY, INC., or of the Trustee herein, W. K. Ingram, and in particular the six matters now pending in the Martrac case and specifically mentioned hereinbefore. This injunction is not to be construed as enjoining any activity in the Martrac case which deals solely with Martrac and does not determine any right of W. F. Hurley, Inc., or its Trustee.

Martrac and Sue immediately appealed from that order, and we have jurisdiction of the appeal by. virtue of 28 U.S.C. § 1292(a)(1).

For reversal respondents contend that the hearing on January 22 was held without adequate notice in violation of Fed.R.Civ.P. 6(d), that there was no "evidence" to support the findings and conclusions of the district court, that the findings and conclusions were inadequate, that the district court exceeded its jurisdiction and abused its discretion in granting injunctive relief, and that the relief granted was in any event too broad.

The view that we take of the case renders it unnecessary for us to discuss all of the issues raised by the respondents in great detail.

Respondents' contention based on the trustee's alleged failure to comply with Rule 6(d), assuming that it is properly before us, is without merit. Respondents through their attorney participated in the hearing and did not ask that the hearing be postponed or adjourned; counsel on both sides were thoroughly familiar with the case and with the issues involved; it does not appear that respondents sustained any prejudice as a result of the short advance notice of the hearing that they received. *See Herron v. Herron,* 255 F.2d 589, 593 (5th Cir. 1958); *Love v. Royall,* 179 F.2d 5, 7 (8th Cir. 1950).

In our opinion, the materials before the district court were adequate to enable the district court to make a proper determination of whether preliminary relief should be granted and the scope of that relief, if any. And we think that the findings and conclusions of the district court were sufficient to satisfy the requirements of Fed.R.Civ.P. 52(a) and 65(d).

We agree with the trustee that in view of the provisions of 11 U.S.C. §§ 11(a)(15), 511 and 516(4) a Chapter X

court may, in the exercise of its discretion, enjoin or stay proceedings in other courts, including a Chapter XI proceeding in another bankruptcy court, involving the Chapter X debtor or its trustee, where such action is necessary to protect the jurisdiction of the Chapter X court, to insure the orderly administration of the Chapter X proceeding, to protect the property of the debtor, or to protect the court and the trustee from impediments or vexatious interference resulting or potentially resulting from the pendency or prosecution of proceedings in the other court. *Duggan v. Sansberry,* 327 U.S. 499, 66 S.Ct. 657, 90 L.Ed. 809 (1946); *In the Matter of Imperial "400" National, Inc.,* 429 F.2d 680 (3d Cir. 1970); *Diners Club, Inc. v. Bumb,* 421 F.2d 396 (9th Cir. 1970); *Magidson v. Duggan,* 180 F.2d 473 (8th Cir.), *cert. denied,* 339 U.S. 965, 70 S.Ct. 1000, 94 L.Ed. 1374 (1950); *Oglesby & Simpson Supply Co. v. Duggan,* 174 F.2d 904, 905 (8th Cir. 1949).[2] *See also* 6 Collier on Bankruptcy, ¶ 3.05 at 438–39, and ¶ 3.09 at 474–84 (14th ed. 1972). *Cf. Steelman v. All Continent Corp.,* 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937).

We are also satisfied that the district court did not err or abuse its discretion in determining that in view of the conditions that existed in late January, 1976, the trustee was entitled to injunctive relief necessary to protect him from having to litigate in Texas the proceedings that Martrac had instituted in the Texas court.

As of the time with which we are concerned, the situation with which the trustee and the district court were confronted was urgent, perhaps more so than it is today. It was imperative that the farm lands be leased immediately for the 1976 crop year, and it was imperative that the trustee's plan be ruled upon within the immediate future if the sale of the lands was to take place within the time limited. Those objectives simply could not have been achieved if the proceedings in Texas were allowed to

---

2. We recognize that those cases did not involve injunctions or stays directed at Chapter XI proceedings. However, if, as was the case in *Sansberry,* a Chapter X court can enjoin fur-

ther proceedings in a straight bankruptcy case pending in another court, we see no reason why a Chapter X court cannot enjoin further proceedings in a Chapter XI court.

continue. Moreover, the issues raised by Martrac in Texas could have been litigated in the Arkansas court, and Martrac's efforts to litigate them in Texas was ·a flagrant example of forum shopping. It appears to us that the proceedings as a class were in direct disregard of the established jurisdiction of the Arkansas court.

■ That jurisdiction had been conferred by the Texas court when it transferred the Hurley proceedings to Arkansas originally, and we see no legal merit in the claim of Martrac that it was entitled by virtue of Rule 10–114(c) or otherwise to have the Texas court reconsider the question of venue. As to Rule 10–114(c), we think it to be inapplicable to the situation presented here.

■ Nor do we think that the relief granted was overbroad. While the order contains certain general language, the order was directed primarily at the six proceedings launched by Martrac which have been described. Further, the operative part of the order should be read in connection with the district court's Conclusions of Law Nos. 11 and 12.

Conclusion No. 11 recognized that the Arkansas court should and would consider the issues raised by Martrac, including the question of venue.

And Conclusion No. 12 recognized that some of the controversies between the trustee and Martrac should perhaps be considered in Texas and directed the Arkansas bankruptcy judge to entertain any application of Martrac to transfer particular controversies to Texas. And the Arkansas bankruptcy judge was encouraged to communicate with his counterpart in Texas and with the Texas district judge to whose docket the Chapter XI case had been assigned and to secure their advice and counsel as to what matters or issues, if any, should be transferred to Texas.

■ If the district court had directed its preliminary injunction against Martrac and Mr. Sue, we would have no difficulty in affirming its action. Unfortunately, the district court undertook to enjoin the Texas court as such, and the propriety of that action we are constrained to question even though the subject does not appear to have been brought up by respondents.[3]

In *Steelman v. All Continent Corp.,* *supra,* 301 U.S. at 290–91, 57 S.Ct. 705, the Supreme Court recognized that it is one thing for a bankruptcy court to enjoin a litigant from proceeding in another court, and it is quite another thing to enjoin that court itself from proceeding in a cause pending before it.

11 U.S.C. § 516(4) does not in terms authorize a Chapter X court to enjoin another court from entertaining or continuing with proceedings involving a debtor or· his property. Section 11 which defines the powers of courts of bankruptcy provides in Subsection 15 that a bankruptcy court may "[m]ake such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title: *Provided, however,* That an injunction to restrain a court may be issued by the [district] judge only." And that subdivision may suggest that the injunctive powers of a bankruptcy court extend to other courts as well as to suitors therein.

The question is discussed briefly in 6 Collier, *supra,* ¶ 3.09 at 485, n.25. The author is of the view that there is a need for the power in order to take care of the rare situation in which a court on its own motion persists in acting in a case in which the litigants have been enjoined from proceeding further. The author thinks that the power exists and that it is reposed in the district judges, and he cites our decision in the old case of *In re Dana,* 167 F. 529 (8th Cir. 1909).

In that case a federal bankruptcy court enjoined both the litigants in a state court, and the state court itself. In vacating the injunction as against the court we said (167 F. at 530):

---

**3.** In his brief counsel for the trustee took brief note of the existence of the problem but did not dwell upon it.

The injunction in this case ran, not only against the parties to the suit in the state court, but also against the state court itself and the judge. Assuming, without deciding, that power exists so to extend the writ, clearly it should never be exercised, except in case of imperative necessity. An injunction operating upon the litigants alone will rarely fail to accomplish all that is needed, and it should not be anticipated that a judge of a state court will of his own motion insist upon proceeding after the parties in interest have been restrained by a court whose jurisdiction in the particular matter is paramount. A considerate regard for the dignity of the courts of the states, so essential to harmony in our intricate judicial systems, forbids an assumption that they will not be equally solicitous to observe the Constitution and laws of the United States, which constitute the supreme law of the land binding upon all the courts. Indeed, it appears that before the injunction in question was awarded the state court, which by its receiver had the actual possession of the property, voluntarily surrendered it to the receiver appointed in the bankruptcy proceeding upon request being made.

The order of injunction should be amended by discharging therefrom the court of the state and the judge; otherwise, the petition to revise is denied.

While it may be that there are cogent reasons for a federal court to refrain from enjoining a state court which are not persuasive with respect to the question of enjoining another federal court, nevertheless it is undesirable and unseemly for courts to make a practice of enjoining other courts and the judges thereof.

■ Assuming without deciding that a district judge has the naked power in a Chapter X case to enjoin another federal court from proceeding in matters before it, it is obvious that the power should be exercised only in the most exigent circumstances.

■ We are not persuaded that such circumstances existed in this litigation in January, 1976, or that they exist at this time. It is true that the bankruptcy court in Texas took certain actions in connection with the proceedings filed by Martrac after the Arkansas court had acquired jurisdiction of the Hurley companies. It is also true that on January 21, 1976 the bankruptcy judge in Arkansas entered a temporary restraining order prohibiting Martrac, Sue and others from taking any proceedings against the debtor companies or the Trustee without leave of the Arkansas bankruptcy court, but that notwithstanding that order some proceedings were had in the Texas bankruptcy court on January 22. However, the order of January 21 was entered at 4:00 p.m. on January 21, and was served by mail. It is not contended that Martrac, or Sue or the Texas bankruptcy judge had any knowledge of the order in question when the proceedings in Texas were conducted on January 22. There is nothing to indicate, and we will not presume that if Martrac and Sue had been timely enjoined from pressing these proceedings further, the Texas court would knowingly have insisted on acting further in them in spite of the order of the Arkansas court.

If the district court had enjoined Martrac, Sue and the Texas court, we would affirm the order of the district court as to Martrac and Sue and would simply dissolve the injunction as against the Texas court. As it is, we feel that we must remand the case with directions that the preliminary injunction against the Texas court be dissolved and for reconsideration of the question of whether injunctive relief against proper parties should be granted.

Such reconsideration should be upon appropriate notice and opportunity for hearing and should be conducted in the light of the facts and circumstances of the case which now exist and which may be quite different from those that existed early last year. We suggest that in connection with the reconsideration the parties should endeavor to agree upon a final submission of the matter on the basis of what is developed at the hearing, if any.

The clerk of this court is directed to mail copies of this opinion to the clerk of the United States District Court for the Southern District of Texas for the information of the appropriate district judge and bankruptcy judge in that state.

Remanded with directions to dissolve the preliminary injunction and for further proceedings not inconsistent with this opinion.