In re DIVERSEY HOTEL CORPORATION.

KOSDON et al. v. DIVERSEY HOTEL CORPORATION.

No. 9451.

Circuit Court of Appeals, Seventh Circuit.

Jan. 21, 1948.

Writ of Certiorari Denied March 29, 1948.

See 68 S.Ct. 739.

William Henning Rubin and Meyer Abrams, both of Chicago, Ill. (Shulman, Shulman & Abrams, of Chicago, Ill., of counsel), for appellants.

Roger S. Foster, Sol., Securities and Exchange Commission, and W. Victor Rodin, both of Philadelphia, Pa., Thomas B. Hart, Regional Administrator, G. Gale Roberson, and Leo J. Powers, Attys., Security and Exchange Commission, all of Chicago, Ill., Randolph Bohrer, Edward Blackman, John H. McAuliffe, and Simon H. Alster, all of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

The appellants who hold bonds in the above-named corporation seek by this appeal to set aside an order of the District Court in a chapter X Reorganization Proceeding, 11 U.S.C.A. § 501 et seq., which declared the petition in said proceedings was filed in good faith, and also seeks relief from an order wherein the court appointed a trustee of said debtor and its property.

Stripped of its verbal foliage, the attack is directed to an assault upon the court's finding that the debtor's petition was filed in good faith—a prerequisite of a valid order taking over a debtor's property for reorganization. Such a finding of good faith was specifically made by the District Court in this case, and our inquiry is as to its correctness, factually and legally.

Briefly, perhaps too skimpily, the petition stated that petitioner was unable to pay its debts as they matured. It was filed a few days before maturity of a large bond issue. It stated ownership of two pieces of realty on Diversey Parkway, in Chicago. The one building was a four story office building; the other was a hotel eight stories high. Petitioner asserted this property and furnishings possessed a value of $1,450,000, which, together with other assets including cash on hand of $45,409, totalled $1,512,-902.72. It listed total liabilities of $1,424,-578 of which its mortgage, due June 1, 1947, amounted to $1,387,500. There had been a foreclosure of the property, instituted in 1932, but before completion of proceedings there was a reorganization followed by the issuance of new bonds. One hundred shares of common stock, having a par value of $10 were also provided for, and it is concerning this stock that much of the instant controversy centers. Appellants contend that stock should have been distributed to the old bondholders (or under the plan it could have been sold and

the proceeds distributed) but instead was retained in a committee headed by one George Pearson (who filed the instant petition) as president. The appellants contend that he has been in control of the property and by the instant proceeding seeks to retain that control for another indefinite period.

Appellants are three holders of bonds totalling $21,000. They were the only ones to attack the good faith of the petition. They state that Pearson sought to effect a sale of the property for a couple of months immediately prior to the maturity of the. mortgage, and received an offer of $1,200,-000, which offer was not submitted to the bondholders for their consideration. Appellants state that since the assets of the petitioner have a value less than the first mortgage indebtedness, the corporation is insolvent and the only plan that can be consummated is a liquidation. They state, "There is no reason to expect that a reorganization which is fair can be approved and the proceeding must be dismissed for want of good faith. Only a liquidation will result; therefore, the proceeding was not instituted in good faith and must be dismissed." No effort was made, appellants state, to obtain a voluntary extension of the mortgage.

In reply to the objections, petitioner points out that no stockholder ever asked that the stock be distributed; that had such stock been distributed, appellants would be entitled to but a fraction of one share, which vote would have carried little weight at any stockholders' meeting.

While it may appear to an impartial observer that properties grossing $216,000 rentals (as stated in the advertisement of sale) should have been able to achieve some reduction in the amount of the first mortgage since 1932, and such inability might not make one too sanguine over the outcome of these proceedings, still the instant proceedings might be a crutch to carry the bondholders through and to the end of their long period of convalescence.

We have witnessed the decline and rise of real estate values in Chicago. Those who held on have been rewarded generously. Their hopes are brighter today than ever, as is evidenced by the fact that they are now and have for eight years been receiving a fair return (4%) on their investment and for two years earlier their bonds drew interest. We think the trial judge may take notice of facts which are brought to his attention every day in similar reorganization proceedings. Likewise, we can not ignore the papers filed by other bondholders who ask the court to accept the good faith of the very substantial claims of many creditors and also the petition of the Security and Exchange Commission, whose action must be accepted as undertaken in an effort to help all creditors. After all, if the best offer petitioner secured was $1,200,000 at a voluntary sale, the bondholders stood to lose a substantial amount. If the great majority of the bondholders wish to defer liquidation until a more propitious offer * be made, or should they prefer to attempt a reorganization in these proceedings, their wishes weigh heavily in determining the proper course of action. They are the creditors who are taking the chance. We have no doubt that Judge Campbell was largely influenced by their wishes.

The discussion of the opposing counsel leads us to the conclusion that one, if not the sole basis of difference between them, is traceable to their different conceptions of the meaning of the phrase "good faith". Obviously, this is not a term of precise or restricted meaning in the law. It is a phrase of frequent use and application, and must find its correct connotation in the facts and in the field wherein it is used.

When applied to action of individuals

---

* It is stated the Chicago Real Estate Board appraised the property at $1,350,-000. Stenographic minutes of a meeting disclose that the sales price would have to be around $1,650,000 in order to cover tax upon profit of sale, whereas the price would not have to be as great in a reorganization. They evidently considered and weighed the advantages and disadvantages of all possible avenues of coping with the maturing mortgage. A Chapter X reorganization was thought desirable because requiring only two-thirds of the bondholders' agreement to reorganize, and it would give a better title for purposes of sale.

holding a fiduciary position, it is rather easy of application. When its absence is the basis of a criminal charge or the measure of degree of business misjudgment, it involves an appraisal of the facts and legitimate deductions arising from said facts. Here it is used in a narrower sense.

It is not infrequent that a litigant sues to redress a wrong. Often the defendant so sued may feel strongly, and assert that the suit against him is not filed "in good faith." However, the right to sue is not denied. The court awaits the presentation of proof before it acts.

In suits or proceedings like the one at bar, we find a large group of creditors whose investment has turned sour, or perhaps it was of that nature at all times. The desperate creditors desire to save something out of the wreck. They cause a petition to be filed in a court of bankruptcy to secure relief. Being only a fraction of all of the creditors similarly situated, their efforts to improve the situation invite the support or the opposition of other creditors.

Foreclosure of the mortgage, if the creditors' holdings should be bonds, was once the common, and at times the only remedy. Congress, however, provided an additional remedy called Reorganization Proceedings, which was a modification or enlargement of the Bankruptcy Act. The creditors' right to invoke the Federal Court's jurisdiction under this Act, however, necessitated an additional fact; namely, good faith on the part of the debtor who cause the petition to be filed.

■ What is here meant by good faith, we think, is not the same as the alleged breach of fiduciary integrity. It is a restriction on the free right to sue, which experience demonstrated, was necessary to avoid using this highly meritorious means of avoiding great losses in a time of national stress, from being misused by unscrupulous creditors or groups of creditors or their attorneys. Experience seemed to demonstrate that such requirement was necessary to avoid the milking of the embarrassed debtors and the enrichment of a few professional reorganizers possessed of mischievous or hungry proclivities.

The District Court is charged with the duty of preventing this misuse. Being in a favored position, it can well judge of the disposition and intent of those who knock at its door and seek admission. If the court becomes convinced that the petitioner is earnestly acting for the creditors and has their backing and support, it will approve of the good faith of the moving party and await the facts that arise from a plan of reorganization.

· If the court finds that most all of the creditors believe there is hope in the situation and that something worthwhile can be saved from the wreck and there exists a reasonable possibility of improving the position of all creditors, the stamp of approval will be readily given. This we take it is the issue of good faith and this court will seldom disturb the district court's ruling, especially when the vast majority of the creditors favor it.

■ In the present proceedings not only the petitioner, the debtor, but other creditors came into court and joined the petitioner and asked the court to accept the petitioner's effort to reorganize. Moreover, the Securities and Exchange Commission has appeared and argued forcefully in support of the petition. The opposition was limited to a negligible number of claims. Those supporting the petition are manyfold times as large as the opposing creditors.

The Court's experience is a valuable aid in such instances. It may know from experience whether Petitioner and its counsel, and the objectors and their counsel are entitled to its confidence.

Our conclusion is that we not only support Judge Campbell's finding that there was good faith in the filing of this petition, but we think any other finding would have been impossible.

■ Upon the oral argument there was raised a serious question not presented by counsel in their briefs, respecting the effect of the holding of the stock of the corporation by the holders of the bonds. Counsel have since filed informative and helpful briefs which have been examined with the result that we are convinced that in this

particular case there was no merger of the bondholders' interest into the stockholders' so as to cause a merger, or to lose their identity.

■ Merger is at best determined by intention. It is sometimes called a factual issue, but perhaps it is better to say it is in its nature an issue of fact and a conclusion deducible from the facts. The intention of the owner of the equity is largely determinative of the existence of a merger. Wiltsie on Mortgage Foreclosure, Sec. 264; In re Embassy Co., D.C., 58 F. Supp. 1004; Factors' & Traders' Ins. Co. v. Murphy, 111 U.S. 738, 4 S.Ct. 679, 28 L.Ed. 582; 2 Jones on Mortgages, Sec. 1080; 2 Pomeroy Equity Jurisprudence, Sec. 791; Chicago Title & Trust Co. v. Wolchinovesky, 326 Ill.App. 194, 61 N.E.2d 264. If the cause of the bondholders requires the incumbrance to be kept alive, his intention to do so will be inferred and followed. In the present case it is highly to the interest of these bondholders to have their lien kept alive. The bondholders' rights are in this reorganization determined by the wishes of two-thirds in amount, of the bondholders. This we think is of vital importance.

The order is affirmed.

MAJOR, Circuit Judge, concurs in the result.