**CAPITOL MOTOR COURTS et al. v. LE BLANC CORP. et al.**

No. 103, Docket 22492.

United States Court of Appeals
Second Circuit.

Argued Dec. 3, 1952.

Decided Jan. 12, 1953.

George C. Levin, New York City (Krause, Hirsch, Levin & Heilpern, New York City, on the brief), for appellants.

Robert G. Zeller, Carlos L. Israels, and Frederick E. Winkler, all of New York City (Cahill, Gordon, Zachry & Reindel, Berlack & Israels, and Newman & Bisco, all of New York City, on the brief), for appellees.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

On October 3, 1951, The LeBlanc Corporation, incorporated under the laws of Maryland on August 24 1951, filed a petition in the district court below for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. On the same day, after this petition had been approved, The LeBlanc Corporation,

existing under the laws of, and doing business in, Louisiana, filed its application in the same proceeding as a subsidiary of the Maryland debtor, pursuant to Bankruptcy Act § 129, 11 U.S.C.A. § 529. This petition was approved, and on October 5, 1951, Milton F. Rosenthal was appointed trustee of the debtors. Thereafter the petitioners-appellants, twenty-one creditors from Louisiana and neighboring states having claims of approximately $161,000, filed a motion to dismiss the petitions for lack of jurisdiction or in the alternative to transfer the proceedings to the United States District Court for the Western District of Louisiana, Opelousas Division. The court, after a hearing and upon stipulated facts, denied the motion to dismiss; it also entered a further order continuing Rosenthal in office as trustee. This appeal is from both orders; but the error assigned is the same as to each, namely, the court's acceptance of jurisdiction over the petitions.

In passing upon the issue, the district judge wrote a careful opinion setting forth fully the financial transactions of the debtors. There seems no occasion to repeat all the details here. The Louisiana debtor has been engaged for some years in the manufacture and sale of a dietary supplement or patent medicine known as "Hadacol." Its principal office, place of business, and manufactory, together with a warehouse under construction, are at Lafayette, Louisiana. In 1950 it employed 500 to 800 people, while at the time of its petition it employed approximately 50. In 1951, negotiations were conducted for the sale of the business to New York interests. By agreements of July 22 and August 23, 1941, Dudley J. LeBlanc and six others agreed to sell all the outstanding stock to the Tobey Maltz Foundation, Inc. of New York for $8,205,000—$250,000 in cash and the balance in installments. As contemplated in the agreement, a new corporation, the Maryland debtor, was incorporated on August 24, 1951; and that day it borrowed $250,000 from Francis S. Levien, a subscriber to its stock, and then loaned it to the Foundation. With this the latter obtained the stock of the Louisiana debtor, the certificates being held by Asher Lans, counsel for the Foundation and president of the Maryland debtor, until September 6, when he delivered a typewritten certificate for all of this stock to Levien. Levien has since held this certificate as security for the loan.

The agreement contemplated that with the organization of the new corporation, the Foundation would cause the old corporation to be dissolved and would transfer the latter's assets to the new corporation, except for the trademark "Hadacol" and the formula for its manufacture, which were to be licensed to the new corporation, and that the new corporation would assume the obligations of the old corporation. Accordingly, by way of assignment and license, the Maryland debtor took over the choses in action and assumed the obligations of the Louisiana debtor. But it soon developed that many of the accounts receivable, the largest item of assets, did not represent firm sales, but only sales on consignment or "guaranteed sales" of the product. On or about September 20, the Collector of Internal Revenue in New Orleans filed a tax lien against the Louisiana debtor in the amount of $656,151.83. On September 27, the factoring concern to which accounts in the amount of $2,600,000 had been assigned and from which $150,000 was borrowed, attached the only substantial bank account of the Maryland debtor; and a receivership action was started against it in Maryland. There were various other actions against the debtors in other parts of the country. On September 29, the Foundation assigned the stock of the Louisiana debtor to the Maryland debtor; and this transfer was noted on the books of the Louisiana debtor on October 1. On October 2, at a meeting in the office of Lans in New York, the directors of the Maryland debtor ratified the purchase of the stock and voted to file a petition for reorganization in this district; at the same meeting the directors of the Louisiana debtor voted to file a petition as subsidiary if and when the petition of the Maryland debtor should be approved.

Filing of these petitions then followed on the next day.

Appellants based their objections on four grounds which the court considered and rejected. It will be convenient for us to take them up in the same order. The four grounds were: First, that legal requirements were not observed, particularly in the "unseemly haste" in which the two petitions were filed; Second, that there was an insufficient showing why adequate relief could not be obtained under Chapter XI, 11 U.S.C.A. § 701 et seq., through a petition for an arrangement, rather than for reorganization; Third, that the petitions were not filed in good faith; and Fourth, that the court was without power to act, since the Maryland debtor had not been in business for more than three months as allegedly required under the Bankruptcy Act § 128, 11 U.S.C.A. § 528.

First. It is clear that the express statutory requirements were fulfilled; and there is no prohibition against haste, unseemly or otherwise. Section 129 provides: "If a corporation be a subsidiary, an original petition by or against it may be filed either as provided in section 128 of this title or in the court which has approved the petition by or against its parent corporation."

█ Here the petition of the Maryland debtor was filed at 11:20 a. m. and approved at 12:50 p. m. The petition of the Louisiana debtor was filed at 1:12 p. m., and approved at 4:20 p. m. In view of the precarious situation of the debtors, as alleged in the petitions and confirmed by the stipulated facts, this appears to have been none too soon. Because of the frequent need for haste in bankruptcy proceedings to preserve the estate against claims, it is undesirable that requirements for delay be read into the statute when not expressly stated. The petitions were in appropriate form, 11 U.S.C.A. § 530; no notice or hearing was then required. Before the first meeting of the creditors, the objecting creditors filed their objections, as provided under § 137, 11 U.S.C.A. § 537, and have been fully heard.

█ Second. Although the corporate organization of the Maryland debtor was a comparatively simple one—$250,000 authorized capital stock, of which $100,000 had been issued to these stockholders for $500 cash, services rendered, and partial release of indebtedness—the court relied on several factors to find satisfied the element of the good faith requirement, § 146(2), 11 U.S.C.A. § 546(2), that adequate relief would not be obtainable by a debtor's petition under Chapter XI. Among other things were the need to reorganize the subsidiary in the same proceeding and to provide adjustment for secured creditors and the desirability of a disinterested trustee, all available in Chapter X, but not in Chapter XI, proceedings. S. E. C. v. U. S. Realty & Improvement Co., 310 U.S. 434, 447–452, 60 S.Ct. 1044, 84 L.Ed. 1293. The court adverted also to the wide-flung nature of the business, the scattering of its creditors, and the unfamiliarity of the new management, coupled with the suddenness of the financial crisis, which made it impossible to present a plan of arrangement. There are 7,400 creditors scattered throughout the United States exclusive of an estimated 33,000 possible creditors for "push money" (commission payments to retail sellers of the product). The liabilities total approximately $4,250,000. Of these, approximately $3,500,000 is held by about 160 creditors represented by a Creditors' Committee, of which Albert Hailparn is chairman and which supports the proceedings in New York. The proceeding for an arrangement is a useful and proper extension of the idea of compromise in the former § 12 of the Bankruptcy Act, 11 U.S.C.A. § 30; but it seems reasonably clear that no simple and readily acceptable plan of arrangement can be forthcoming to meet these accumulating financial difficulties. Mecca Temple of Ancient Arabic Order of Nobles of Mystic Shrine v. Darrock, 2 Cir., 142 F.2d 869, certiorari denied 323 U.S. 784, 65 S.Ct. 271, 89 L.Ed. 626.

█ Third. To support their claim that the petitions were not filed "in good faith" in the statutory sense, 11 U.S.C.A. §§ 541–

543, 546, appellants refer not only to the general circumstances hereinbefore noted, but also to a particular provision in the contract with the Foundation of July 22, 1951, that stock of the Louisiana debtor was to be stamped with a restriction against transfer except for the purpose of dissolution, and assert that the transfer of the stock to the Maryland debtor which completed making the Louisiana debtor a subsidiary as defined by the statute, 11 U.S.C.A. § 506(13), was made with full knowledge that this violated stockholders' rights. No stockholders have appeared to complain, and the time for such objections under 11 U.S.C.A. § 537 has now passed. Under the circumstances the steps taken may be the best or only way to carry out the intent and substance of the restriction. At any rate there seems no reason why these creditors should be constituted vicarious avengers of stockholders' rights.

Appellants also rely on the location of the business in Louisiana and the asserted inconvenience and added expense of a New York trustee to carry on the business. This would seem more properly directed to the alternative application for transfer of the proceedings under 11 U.S.C.A. § 518, which the judge denied in the exercise of his discretion. In any event, it is at most but one of the factors to be considered. As the appellees well say, the troubles of the business were not manufacturing but financial, and the heart—and also body—of that was in New York. The business appears to be operating under a general manager; and the expenses of the trustee's trips to Louisiana seem small in the general picture.

■ Fourth. Appellants' final point rests upon their construction of § 128 of the Bankruptcy Act, 11 U.S.C.A. § 528, which provides for the filing of an original petition in reorganization with the court "in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets for the preceding six months or for a longer portion of the preceding six months than in any other jurisdiction." Appellants assert that this provision requires the corporation to have been doing business in the district for more than three months or in effect the "longer portion of the preceding six months," and that since the Maryland debtor was in existence only for some forty days it obviously could not comply. This interpretation might have been justified under earlier versions of the statute, as, for example, the provision of the old § 77B(a) before 1938, 11 U.S.C.A. § 207(a), referring to "the preceding six months or the greater portion thereof." But the present form of the statute seems clearly to require only a principal place of business or principal assets in the district for a period longer than in any other district. This is our holding in Fada of New York v. Organization Service Co., 2 Cir., 125 F.2d 120. And see also 1 Collier on Bankruptcy 182, n. 2, 14th Ed.1940.

We agree with the court below, therefore, that none of the objections of the appellants are well taken. One may perhaps have some sympathy for these more or less local creditors of a Louisiana concern who suddenly find that its financial heart has moved to New York. Appellants urge that a grave question of policy is involved. We could agree if there had been a planned purpose to hinder and delay the Louisiana creditors. But it seems clear that the present stockholders thought they were taking over a prosperous concern and were suddenly confronted with a financial crisis because of the impending insolvency. In a situation of this kind local creditors are protected not only by the various details of the statutory requirements, but by the over-all need of the debtors to convince the court of their good faith in the statutory sense in the filing of their petitions. The creditors may also seek relief in the discretionary power of the judge to transfer the proceedings to their home district. We think that these are adequate and, in view of the absence of any convincing showing of abuse, that the orders of the district judge here must stand.

Orders affirmed.