224 F.2d 834
 In the Matter of RIDDLESBURG MINING COMPANY, Inc., Debtor.
Appeal of Don A. MARSHALL, Personally, and Commercial Coal & Coke Corporation and
Waldo & Maltby, Inc.
Appeal of Don A. MARSHALL, Personally, and
Waldo & Maltby, Inc.
 No. 11404.
 No. 11405.
 No. 11474.
 United States Court of Appeals Third Circuit.
 Argued March 7, 1955.
 Decided July 1, 1955.
 
 Sidney L. Wickenhaver, Philadelphia, Pa., E. W. Van Horn, Jr., Bedford, Pa. (R. Lester Moore, Philadelphia, Pa., on the brief), for appellants.
 Philip Baskin, Pittsburgh, Pa. (Baskin & Baskin, Pittsburgh, Pa., W. A. Blair, Griggs, Moreland, Blair & Douglass, Pittsburgh, Pa., Paul E. Hutchinson, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellees.
 Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 In the matter of the proceedings for reorganization of Riddlesburg Mining Company, Inc., under the corporate reorganization section of the bankruptcy statute, 11 U.S.C.A. § 501 et seq., appeals have been taken to this court with reference to four orders entered therein. The appeals were argued together and will be covered by this opinion.
 
 
 2
 On January 5, 1953, certain creditors filed a petition for reorganization of the Riddlesburg Mining Company in the district court for the Western District of Pennsylvania, alleging, inter alia, that the company was unable to meet its debts as they matured. The petition set forth an approximate statement or narrative of assets and liabilities, including disputed liabilities, and alleged that a mortgage foreclosure proceeding had been instituted against the real estate of the debtor in the Court of Common Pleas of Bedford County, Pennsylvania, and that reorganization was necessary to prevent severe losses to the debtor company and its creditors.
 
 
 3
 The day the petition was filed, a hearing was held thereon with regard to the matter of good faith, and on the following day, January 6, 1953, the district court entered an order approving the petition, appointed a trustee for the debtor, and enjoined certain mortgage creditors from proceeding with the foreclosure action pending in the state court. Subsequently, on February 10, 1953, an order was entered permitting the debtor to answer. The answer, when filed, admitted the allegations of the petition. On February 26, 1953, the first and second mortgage creditors filed a controverting petition, challenging the good faith of the petition and praying for a dismissal thereof.
 
 
 4
 On May 24, 1954, the district court denied appellant's prayer, which asked that the order of January 6, 1953, approving the petition be vacated and that the petition be dismissed.
 
 
 5
 Appellants challenge this May 24th order, and contend that the district court erred in finding good faith. The question of good faith is essentially one of fact, and a district court's determination will not be disturbed unless clearly erroneous.[1] After an examination of the various arguments offered by the appellants, we cannot say that the district court's determination was clearly erroneous. The appellants' main argument, among several, is that it was not reasonable at any time to expect that a plan of reorganization could be effected, and therefore under Section 146, 11 U.S.C.A. § 546, the petition should have been dismissed.
 
 
 6
 The issue raises questions of fact, and without attempting to review all the facts in evidence by testimony or affidavit, we enumerate a few of the significant ones: The reorganization petition was supported by many of the secured and unsecured creditors, as well as by the debtor's stockholders, and the debtor itself; the debtor had assets consisting of coal lands and other equipment incidental to a coal operation. The value of the assets when the petition was filed was an important determination with regard to possible reorganization. Opinions as to the value of the assets, which had been considered very valuable a few years prior to the filing of the petition, were contradictory and varied greatly.
 
 
 7
 From this difference of opinion as to the debtor's assets and the extent of its liabilities the district court concluded that a reasonable chance of reorganization existed. The perspective of hindsight does not, of course, affect the original determination that reorganization was reasonably possible and cannot provide a basis for reversing the district court.
 
 
 8
 An appeal was also filed from another order of the district court entered on May 24, 1954, by which order the district court adjudicated the debtor a bankrupt, following its inability to promulgate a plan of reorganization, and retained jurisdiction over the debtor's assets for the purpose of paying administration expenses incurred during the period of attempted reorganization.
 
 
 9
 Under Section 236 of the statute, 11 U.S.C.A. § 636, two courses were open to the district judge after it became apparent that reorganization was not possible. It was within his discretion to dismiss the petition and end the proceedings or to adjudicate the debtor bankrupt and proceed as though the original petition had been one in bankruptcy. No adequate reason has been advanced by the appellants to support their contention that there should have been a dismissal and the consequent transfer of the contests to other tribunals, and so it cannot be said that there was an abuse of discretion by the district court.
 
 
 10
 As to the second part of this May 24, 1954, order, it is the strenuous argument of the appellants that it would be inequitable to pay the administration expenses from the proceeds of the mortgaged premises to the possible detriment of the mortgage creditors in view of the fact that the mortgage creditors throughout the proceeding actively fought for its dismissal. They claim that the district court had no authority to retain jurisdiction as it did. The reply of the appellees is that the district court did have the authority and also that the objecting mortgage creditors were mainly responsible for the failure of the reorganization attempts because the proceedings were handicapped and delayed in part by a spurious excessive claim put forth by one of the appellants under its mortgage.
 
 
 11
 Section 246 of the Bankruptcy Act, 11 U.S.C.A. § 646, gives the judge authority to allow reasonable compensation for administration expenses incurred during a reorganization attempt. There is no limitation with regard to secured or unsecured assets. Whether, and to what degree, the mortgage creditors should run a risk of loss in order to make possible a reorganization was wholly within the discretion of the district judge,[2] who properly exercised his discretion.
 
 
 12
 An appeal has also been taken from the "Opinion of Wallace S. Gourley, Chief Judge," filed June 30, 1954, D.C., 122 F.Supp. 560. That opinion was filed contemporaneously with the entry of an order by Chief Judge Gourley, and we will treat the aforesaid reference to an "Opinion" in the notice of appeal as a typographical error because, manifestly, the appellants intend to appeal from the order.
 
 
 13
 Briefly, the facts with reference to the subject matter of this appeal are as follows:
 
 
 14
 Sometime prior to this proceeding, the debtor had executed a second mortgage on its Pennsylvania coal lands to Union Factors Corporation of New York. The original loan which was $50,000 was later reduced to $27,500. Subsequently, Waldo and Maltby, Inc., one of the appellants herein, became the assignee of the second mortgage. In this proceeding, Waldo and Maltby, Inc., asserted a secured claim for $160,593.53, made up of $28,812.50 (apparently the unpaid part of the principal of the second mortgage and the interest thereon) and an additional $122,500.08, plus interest for other indebtedness which was due Waldo and Maltby, Inc., from the debtor. It is the contention of Waldo and Maltby, Inc., that the sum last mentioned is also secured by the mortgage which was assigned to them.
 
 
 15
 The district court referred the matter to a special master who found that the second mortgage was security only for the $28,812.50. Appellants claim that the referee's report, which was confirmed by the court, was wrong.
 
 
 16
 The original mortgage given by the debtor to Union Factors Corporation said that the indenture was by and between "Riddlesburg Mining Co., Inc. * * * hereinafter called the Mortgagor and Union Factors Corporation * * * hereinafter called the Mortgagee." The agreement referred to a $50,000 loan which Riddlesburg was to receive from Union. It also contained the following:
 
 
 17
 "WHEREAS, the parties hereto desire that the within mortgage shall stand as security for the repayment of any additional loans or advances to be made by the Mortgagee to the Mortgagor as well as any extensions, renewals or modifications of the within mortgage, as well as the payment of any and all other indebtednesses, obligations and liabilities of the Mortgagor to the Mortgagee, direct or contingent whether now existing or hereafter incurred; and said mortgage shall be a continuing security for the payment of all of the same.
 
 
 18
 "NOW THIS INDENTURE WITNESSETH
 
 
 19
 "That the Mortgagor, as well for and in consideration of the aforesaid debt or sum of Fifty Thousand ($50,000.00) Dollars, and for the better securing of the payment of the same, as aforesaid, unto the Mortgagee, its certain attorney, successors or assigns, according to the condition of the said above recited obligations [sic] or obligations, and for the better securing of the payment of any additional or future advances or loans, and/or any other indebtednesses, obligations, and liabilities of the Mortgagor to the Mortgagee, and of the further sum of ONE ($1.00) DOLLAR in hand well and truly paid by the Mortgagee, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, enfeoff, release, convey, and confirm unto the Mortgagee, its successors and assigns:"
 
 
 20
 It is clear from the above that the original mortgage to Union was to be security for the $50,000 loan plus any additional amounts advanced to the mortgagor (specifically identified as Riddlesburg) by the mortgagee (specifically identified as Union).
 
 
 21
 Appellant Waldo and Maltby, Inc., assignee of this mortgage, contends that the benefit of the inclusion in the mortgage of "additional loans or advances to be made by the Mortgagee to the Mortgagor," runs not only to Union but to any assignee as well, and that they, as holders of the mortgage by assignment, hold security not only for the assigned balance of the original $50,000 debt, but also for any "additional loans or advances" made to Riddlesburg, because it became the mortgagee after the assignment.
 
 
 22
 We think that Waldo and Maltby, Inc., did not receive as a result of the assignment any security for additional loans and advances. In certain parts of the indenture, the language "Mortgagee, its certain attorney, successors or assigns," was used, but the clause with respect to additional loans or advances ran only to the "Mortgagee," and mortgagee was specifically identified as the Union Factors Corporation.
 
 
 23
 Thus, the mortgage was security for the $50,000 plus any advances made by Union. An assignee would have security only for assigned debts owing to Union by Riddlesburg because of the $50,000 loan or advances by Union. There is no provision in the mortgage that the assignee also has security for advances made to the mortgagor. There does not appear to be any Pennsylvania case which has decided this particular matter. But, in view of the absence of ambiguity in the language of the mortgage indenture, there seems no doubt that in a Pennsylvania court the same result would be reached. Appellants cite In re Great Lakes Lumber Company, D.C.W. D.Pa.1925, 8 F.2d 96, as holding to the contrary under similar mortgage provisions. It is not clear from that opinion just what the mortgage provisions were. To the extent that that opinion is in conflict with our views, we think it incorrect.
 
 
 24
 Appellants have relied specifically on the original mortgage indenture, and, as we have noted, there is no ambiguity in the instrument.
 
 
 25
 Appellants introduced into evidence a letter from Riddlesburg to Waldo and Maltby, Inc., written a short time before Waldo and Maltby, Inc., received the assignment from Union. Appellants contend that this letter indicates that Riddlesburg intended that Waldo and Maltby, Inc., should hold the original mortgage as security for advances made by Waldo and Maltby, Inc., or for any other indebtedness due to Waldo and Maltby, Inc. This contention was vigorously disputed before the special master, who concluded, after hearing oral evidence, that the letter did not express such an intention. Problems raised concerning this letter and the oral evidence used as an aid to interpretation of the letter are immaterial since, even if the letter was an attempt to alter the clear meaning of the original mortgage indenture, and, assuming that it met Pennsylvania requirements for a valid mortgage (which it did not), it was not effectual to create a lien on the debtor's property because it was not properly recorded. See Act of April 27, 1927, P.L. 440, § 1, 21 Purdon's Pa.Stat. Annot. § 622; Act of March 18, 1775, 1 Sm.L. 422, § 1, as amended May 19, 1893, P.L. 108, § 1, 21 Purdon's Pa.Stat.Annot. § 444; Act of June 28, 1951, P.L. 927, § 2, 68 Purdon's Pa.Stat.Annot. § 602; Southwestern Nat. Bank v. Riegner, 1928, 292 Pa. 74, 140 A. 615; Stover v. Valley Nat. Bank, 3 Cir., 1931, 48 F.2d 54, 55; In re Fortescue, D.C.E.D.Pa.1954, 122 F.Supp. 883, 884.
 
 
 26
 The appellants raise another question concerning the June 30, 1954, order. They say that since reorganization failed and the court on May 24, 1954, entered its order adjudicating the debtor bankrupt, the issue as to the amount of the second mortgage became moot, and therefore the order of June 30, 1954, should not have been entered.
 
 
 27
 When the district court referred the second mortgage problem to the special master on July 20, 1953, the order stated that the court thought that the issue of good faith and questions about possible plans of reorganization should be held in abeyance until a determination as to the amount of the second mortgage. The special master's report was filed on April 29, 1954. On May 4, 1954, the district court by order approved the filing and confirmed the master's findings as absolute, unless exceptions were filed. Hearings on the exceptions were concluded on May 24, 1954, but the district court's final order was not entered until June 30, 1954.
 
 
 28
 The court's order of June 30th confirmed the original report of the special master. On May 24, 1954, when it was determined that reorganization was not possible but that the petition had been filed in good faith, the court had before it the report and had already concluded the hearing on the exceptions to the master's report. We cannot say that the court's orders of May 24, 1954, were not dependent upon and influenced at least in part by the special master's report and the hearings on the exceptions. Particularly is this true concerning the rulings on good faith.
 
 
 29
 The amount of the second mortgage was a definite issue in the reorganization proceedings. The fact that the exceptions delayed the final order until after May 24th did not deprive the court of its authority to confirm the master's report.
 
 
 30
 Appellants also argue that the court's order re the second mortgage would not be res judicata in any subsequent proceedings either in a federal or a state court. Manifestly, at this time, we cannot render an advisory opinion on the question.
 
 
 31
 In the June 30, 1954, order, the district court also ruled that no interest on the second mortgage would be payable as to any time after the institution of the reorganization proceeding. The appellants contend that the disallowance of the interest was error. We think that this part of the district court's order was premature and should be vacated.
 
 
 32
 Whether or not the mortgagee should be allowed interest after the date a petition is filed depends upon the amount realized from the mortgaged property, and considerations of equity between the debtor, mortgagee, and other creditors.[3] Until the mortgaged property is sold and the debtor's assets and liabilities determined, it is impossible to know whether or not the interest issue is a real controversy. It may be that when the mortgaged property and the debtor's assets are finally sold by whatever tribunal, the lack of sufficient receipts will render the interest question moot.
 
 
 33
 The last order appealed from is dated September 15, 1954. By it, the district court enjoined the appellant mortgagees and all other Riddlesburg creditors from commencing or continuing any action at law or in equity against the debtor pending a disposition of these appeals to the circuit court. This order naturally prevented the appellants from reactivating their Bedford County mortgage foreclosure suits. As we have pointed out, the district court properly retained jurisdiction over the debtor's properties for the purpose of paying administration expenses. There is no dispute between the parties concerning the authority of the court during reorganization proceedings to stay other proceedings. No reason has been given why the court's authority does not continue until all matters having to do with reorganization have been cleared up. Otherwise, there might be an interference with the court's jurisdiction. Since the court's authority under Chapter X has not ended, there is no need to examine questions raised under the Federal Rules of Civil Procedure, 28 U.S.C.A. concerning stay orders.
 
 
 34
 For the foregoing reasons the district court's orders, as modified concerning the allowance of interest, will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 In re Mifflinburg Body Works, 3 Cir., 1953, 205 F.2d 150
 
 
 [2]
 In re McGann Mfg. Co., 3 Cir., 1951, 190 F.2d 845, 847
 
 
 [3]
 In re Macomb Trailer Coach, 6 Cir., 1953, 200 F.2d 611; Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162