Barton GRUBBS, II, Receiver of Keta Gas and Oil Company, Appellant,

v.

William D. PETTIT, Thomas J. Crawford, and Harry Berger, Trustees, Appellees.

In the Matters of SWAN-FINCH OIL CORPORATION, Keta Gas and Oil Company, Debtors.

No. 369, Docket 26241.

United States Court of Appeals Second Circuit.

Argued June 14, 1960.

Decided Aug. 29, 1960.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Milton Kunen, New York City, of counsel), for Debtor Swan-Finch Oil Corp.

Thomas G. Meeker, Gen. Counsel, David Ferber, Asst. Gen. Counsel, Washington, D. C., Richard V. Bandler, Sp. Counsel, Kiva Berke, New York City, Richard B. Pearl, Attys., Securities and Exchange Commission, Washington, D. C., for Securities & Exchange Commission.

Before WATERMAN, MOORE and HAMLIN,* Circuit Judges.

WATERMAN, Circuit Judge.

Swan-Finch Oil Corporation is a New York corporation with approximately 6,-000 stockholders. It is largely a holding company. For a considerable time prior to September 1957 the affairs of Swan-Finch were controlled by one Lowell M. Birrell. About September 1957 Birrell fled the country and is currently resisting extradition from Brazil. On January 2, 1958 Swan-Finch filed a petition in the Southern District of New York seeking reorganization pursuant to Chapter X of the Bankruptcy Act, Section 101 et seq., 11 U.S.C.A. § 501 et seq. The petition was approved, and two trustees were appointed.

Due to Birrell's manipulations the affairs of Swan-Finch were in great confusion. One of the assets claimed by the Swan-Finch trustees was the entire issued and outstanding stock of Keta Gas and Oil Company, a Pennsylvania corporation. This stock had been acquired by Swan-Finch on September 27, 1955. On December 31, 1956, the Keta stock was purportedly transferred to Doeskin Products, Inc., a corporation at that time also controlled by Birrell. The subsequent controversy between Swan-Finch and Doeskin over the control of Keta was eventually resolved by the Second Circuit in favor of Swan-Finch in an opinion filed August 24, 1959, Pettit v. Doeskin

Leonard M. S. Morris, Pittsburgh, Pa. (Sanford M. Lampl, Pittsburgh, Pa., of counsel), for appellant.

George C. Levin, New York City, for appellees.

* Of the Ninth Circuit, sitting by designation.

Products, Inc., 2 Cir., 1959, 270 F.2d 95, certiorari denied, 362 U.S. 910, 80 S.Ct. 660, 4 L.Ed.2d 618. However, prior to this decision, on July 16, 1958, while Keta was still under the control of Doeskin, Keta filed, in the Western District of Pennsylvania, a petition for an arrangement under Chapter XI of the Bankruptcy Act, Section 301 et seq., 11 U.S.C.A. § 701 et seq. That petition was approved, Keta was continued in possession, and on March 3, 1959 appellant was appointed Keta's receiver.

On November 6, 1959 the two trustees of Swan-Finch, the adjudicated owner of all the corporate stock of Keta, filed a petition on Keta's behalf in the Southern District of New York seeking Chapter X reorganization. On November 9 Judge Ryan provisionally approved the petition, and, as Keta is a subsidiary of Swan-Finch, hearings on this petition were consolidated with the Swan-Finch proceeding. On November 13 Judge Ryan denied appellant receiver's motion to dismiss Keta's Chapter X petition. On January 26, 1960 Judge Palmieri designated the two Swan-Finch trustees to be also trustees of Keta, and appointed a third trustee to serve as a trustee of both Swan-Finch and Keta, this new trustee being specifically charged with the duty to safeguard Keta's position in the consolidated Chapter X proceeding. On March 9, 1960 Judge Palmieri filed an opinion and order constituting final approval of Keta's Chapter X petition (Section 144 of the Act, 11 U.S.C.A. § 544).

## I.

Appellant first contends that because a Chapter XI proceeding was pending in the Western District of Pennsylvania the court below should have dismissed Keta's Chapter X petition without considering its merits. Appellant's argument relates to venue. He maintains that Keta's petition in the Southern District of New York does not satisfy the venue requirements of Chapter X unless it qualifies as "an original petition" under Section 129, 11 U.S.C. § 529. He then argues that Section 129 must be read in conjunction with Section 128 which also only applies to "an original petition," [1] that the term "an original petition" has the same meaning in both sections, and that in Section 128 the term is defined as a petition filed at a time when "no bankruptcy proceeding is pending." Then, as the final step in this argument, appellant takes the position that the term "bankruptcy proceeding" in Section 128 refers to any proceeding initiated under any provision of the Bankruptcy Act, Title 11 of the U. S.C.A.

In support of this argument appellant relies heavily upon the Seventh Circuit's holding in Matter of National Aircraft Corporation (Duggan v. Sansberry), 7 Cir., 1945, 149 F.2d 548. The facts there, though similar, are not identical with the facts in the present case. On December 27, 1943 Christopher Engineering Company filed a petition for Chapter X reorganization in the Eastern District of Missouri. On January 21, 1944 creditors of National Aircraft Corporation filed in the Southern District of Indiana an involuntary petition in ordinary bankruptcy against that corporate debtor. On April 6, 1944 the referee in the Indiana proceeding ordered certain of National's properties sold on April 20. On April 19, upon allegations that National was a wholly-owned subsidiary of Christopher, a petition was filed on National's behalf in the Eastern District of Missouri seeking a Chapter X reorganization. Thereupon, on that same day, the

---

1. Sections 128 and 129 read as follows:
   [128] "If no bankruptcy proceeding is pending, an original petition may be filed with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets for the preceding six months or for a longer portion of the preceding six months than in any other jurisdiction."
   [129] "If a corporation be a subsidiary, an original petition by or against it may be filed either as provided in section 528 of this title or in the court which has approved the petition by or against its parent corporation."

Missouri court issued an injunction enjoining the sale that had been ordered in the Indiana proceeding and that was to occur on the following day. The injunction order of the court in Missouri was ignored, the sale occurred as scheduled, and it was approved by the referee in the Indiana proceedings. This approval was affirmed by the district court in Indiana and then by the Court of Appeals for the Seventh Circuit. One of the grounds for the Seventh Circuit's decision was that a subsidiary which had been adjudicated a bankrupt in one district may not thereafter file a Chapter X petition in another district even though a Chapter X reorganization of its parent is pending in the latter district. The Seventh Circuit's reasoning in support of this ground is found at pages 551–552 of its opinion, supra, and is identical with appellant's argument as set forth in the preceding paragraph of this opinion.

The decision of the Seventh Circuit in Duggan v. Sansberry was reversed by the Supreme Court, 1946, 327 U.S. 499, 66 S.Ct. 657, 90 L.Ed. 809. However, as we read the Supreme Court's opinion, the reversal was on other grounds than the ground just mentioned. The Supreme Court held, we believe, that an injunction issued by the reorganization court pursuant to Section 113 of the Bankruptcy Act, 11 U.S.C.A. § 513, may not be collaterally attacked, and that the existence of facts necessary to sustain the jurisdiction of the reorganization court is an issue to be litigated only in that court pursuant to the provisions of Sections 137 and 144 of the Act, 11 U.S.C.A. §§ 537, 544. The language in the Supreme Court's opinion upon which we principally rely for this interpretation is set out in the footnote.[2] Our interpretation coincides with that of Collier (6 Collier, Bankruptcy (14th Ed.), § 3.12),

2. At pages 504–505 of 327 U.S., at page 659 of 66 S.Ct. the Court stated [footnotes omitted]:

"Regardless of whether National's petition for reorganization in the Missouri proceedings was properly filed on April 19, the Indiana Court, on being notified that the petition had been filed and approved and that an injunction had issued, should have stayed immediately the sale of National's assets. Section 113, 11 U. S.C. § 513, 11 U.S.C.A. § 513, provides with respect to reorganization proceedings: "Prior to the approval of a petition, the judge may upon cause shown grant a temporary stay, until the petition is approved or dismissed, of a prior pending bankruptcy, mortgage foreclosure or equity receivership proceeding and of any act or other proceeding to enforce a lien against a debtor's property, and may upon cause shown enjoin or stay until the petition is approved or dismissed the commencement or continuation of a suit against a debtor." Bankr.Act §§ 113, 141, 144, 148, 11 U.S.C.A. §§ 513, 541, 544, 548. It was on the authority of this section, we may assume, that the injunction staying the sale of National's property was issued. As interpreted the section declares that when a petition for reorganization has been filed by a corporation, the judge may stay pending proceedings. It does not differentiate between petitions filed by parent corporations and petitions filed by subsidiaries,

nor does it distinguish petitions which have been filed correctly from those which have been filed erroneously with the reorganization court. It thus applies to National, whose petition for reorganization had been filed and against which a bankruptcy proceeding was pending."

At pages 510–511 of 327 U.S., at page 662 of 66 S.Ct. the Court summarized its holding as follows [footnotes omitted]:

"The problem involves, of course, not the ordinary power of one court of general jurisdiction to question the jurisdiction of another court of general jurisdiction. The jurisdiction of both the bankruptcy forum and the reorganization forum is derived from and is limited by the Bankruptcy Act, enacted in accordance with the congressional power 'to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States.' Constitution, Article 1, § 8. It was within the power of Congress to provide that a bankruptcy court could not permit an attack, even on the usual grounds, to be made upon proceedings initiated in a reorganization court. This power Congress exercised by permitting the reorganization court to stay, as it did, the bankruptcy proceedings.

"The exercise of this power, taken in relation to the facts at bar, was in pursuance of the congressional intention ordinarily to allow parent and subsidiary to be reorganized in a single proceeding,

and that of the Eighth Circuit, Magidson v. Duggan, 8 Cir., 1954, 212 F.2d 748, 757. Therefore we conclude that the question now before us was not considered by the Supreme Court in its decision reversing the Seventh Circuit in Duggan v. Sansberry.

■ We agree with the Seventh Circuit's analysis of Section 129 in all particulars—save one. That single point of disagreement, however, is vital to the outcome of the present case. We agree that Section 129 applies only to an "original petition." We agree that the term "original petition" is defined by Section 128 to mean a petition filed on behalf of a corporation at that time not the subject of a pending "bankruptcy proceeding." We disagree, however, with the Seventh Circuit's apparent conclusion—a conclusion that is clear dictum in view of the fact that the prior proceeding there involved was a proceeding in *ordinary* bankruptcy—that the term "bankruptcy proceeding" in Section 128 includes all Bankruptcy Act proceedings rather than merely proceedings in ordinary bankruptcy.

Sections 126–133 of the Bankruptcy Act, 11 U.S.C.A. §§ 526–533, are a unit constituting Sub-Chapter IV of Chapter X. Accordingly, as the Seventh Circuit recognized, these sections must be construed together. Section 127 provides:

"A petition may be filed in a pending bankruptcy proceeding either before or after the adjudication of a corporation."

The use in this Section of the word "adjudication" (see Section 1(2), 11 U.S.C.A. § 1(2)) requires the conclusion that in Section 127, and hence in Sections 128 and 129 as well, the term "bankruptcy proceeding" refers only to a proceeding in ordinary bankruptcy, i. e., a proceeding under Chapters I–VII of the Act.[3] This careful use of the term "bankruptcy proceeding" occurs not only in Sub-Chapter IV of Chapter X but throughout Chapter X (see, e. g., Sections 112, 114, 121; respectively 11 U.S.C.A. §§ 512, 514, 521) and throughout Chapters XI, XII and XIII (see, e. g., Sections 312, 412, 612, 316, 416, 616; respectively 11 U.S.C.A. §§ 712, 812, 1012, 716, 816, 1016.[4] As Collier states, 6 Collier, Bankruptcy (14th

thereby effectuating its general policy that the entire administration of an estate should be centralized in a single reorganization court. If the reorganization forum lacked the power to stay the bankruptcy proceeding and thereby to prevent a collateral inquiry into its own jurisdiction, this policy of Congress would be frustrated; for instead of one court's having 'exclusive jurisdiction of the debtor and its property, wherever located,' there would be two courts each with a claim to jurisdiction and each denying the other's jurisdiction. We may not construe the Bankruptcy Act as permitting such a state of affairs."

Footnote 5 at page 504 of 327 U.S., at page 659 of 66 S.Ct. of the opinion is significant for there the Court recognized that the Seventh Circuit had construed Sections 128 and 129 in reaching its decision approving the sale. That construction, the Supreme Court noted, was not unanimous, and the Supreme Court refused to choose between the conflicting constructions.

**3.** In arguing to the contrary appellant relies upon the use of the word "adjudged" in Sections 236 and 376, 11 U.S.

C.A. §§ 636, 776, and the use of the phrase "order of adjudication" in Section 326, 11 U.S.C.A. § 726. The argument fails. Under either Chapter X or Chapter XI whenever the peculiar form of debtor relief provided for by the chapter proves unavailing, recourse may be had to ordinary bankruptcy procedures. Hence the use in its various forms of the word "adjudication." See 8 Collier, Bankruptcy (14th Ed.), § 4.03 at p. 280.

**4.** This is clearly the import of Section 102, 11 U.S.C.A. § 502, and the analogous sections in subsequent chapters. Section 102 provides:

"The provisions of chapters 1–7, of this title shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter. * * * For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors,' and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter."

When the phrase "bankruptcy proceedings" is used in Section 102, it refers to

Ed.), § 1.10 at p. 245 (footnotes omitted):

"As we have seen before, a Chapter X proceeding *is* a bankruptcy proceeding in the broad sense. But the Act itself, as a matter of technical terminology, does not use the words 'bankruptcy proceedings' or 'proceedings in bankruptcy' in that sense, but uses them rather to distinguish the ordinary bankruptcy proceeding under Chapters I–VII from the debtor relief proceedings under other chapters of the Act."

And see also 8 Collier, Bankruptcy (14th Ed.), § 4.03 at pages 279–81.

Therefore, a Chapter XI arrangement is not a "bankruptcy proceeding" contemplated by Section 128; and so it follows that under Section 129 no objection may be raised on grounds of venue to Keta's petition in the Southern District of New York despite the existence of a prior Chapter XI proceeding in the Western District of Pennsylvania.

## II.

■ Appellant's second contention is that the court below erred in holding that Keta's Chapter X petition was filed in good faith.[5] Under Section 141, 11 U.S.C.A. § 541, this finding is essential to approval of a Chapter X petition, and the term "good faith" is itself defined (at least partially) in Section 146, 11 U.S.C.A. § 546. At the outset two general principles seem clearly established. First, the burden is upon the petitioner to demonstrate that the petition has been filed in good faith. Marine Harbor Properties, Inc. v. Manufacturer's Trust Co., 1942, 317 U.S. 78, 84–85, 63 S.Ct. 93, 87 L.Ed. 64, rehearing denied, 317 U.S. 710, 63 S.Ct. 254, 87 L.Ed. 566.

And, second, the district court's decision as to whether a given petition has been filed in good faith is a finding that will not be set aside unless clearly erroneous. Matter of Riddlesburg Mining Co., 3 Cir., 1955, 224 F.2d 834; Matter of Mt. Forest Fur Farms of America, Inc., 6 Cir., 1939, 103 F.2d 69, certiorari denied, Merritt v. Mt. Forest Fur Farms of America, 308 U.S. 583, 60 S.Ct. 105, 84 L.Ed. 488.

■ Appellant first argues that there has been no showing that adequate relief is unobtainable under Chapter XI. (Sections 130(7) and 146(2), 11 U.S.C.A. §§ 530(7), 546(2).) Appellant, relying upon SEC v. U. S. Realty & Improvement Co., 1940, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, maintains that Chapter X was designed to grant relief only for widely held corporations or corporations with complicated structures of secured debt. We disagree with appellant's interpretation of that case. Any doubts on this point have been dispelled by General Stores Corp. v. Shlensky, 1956, 350 U.S. 462, 465–468, 76 S.Ct. 516, 100 L.Ed. 550. There the Supreme Court held that it is not the size or capital structure of the debtor that determines whether Chapter XI relief is adequate, but rather this question is to be determined by the problems likely to be faced in the attempt to restore the debtor to health.

■ We hold that when the parent corporation is in manifest need of Chapter X relief that fact alone is sufficient to establish in most cases the inadequacy of Chapter XI proceedings for its wholly-owned subsidiary. Intervention by the Securities and Exchange Commission on behalf of the parent's security-holders (an intervention not available under Chapter XI) will be less effective if the

---

those instances where the phrase is used in Chapters I–VII. See 6 Collier, Bankruptcy (14th Ed.), § 1.10, text at footnote 10.

5. Sections 143 and 144, 11 U.S.C.A. §§ 543, 544 specify only the debtor, on the one hand, and creditors, indenture trustees, and stockholders, on the other, as parties with standing to controvert the

allegations in a Chapter X petition. Accordingly, we have some doubt as to whether appellant has standing to contest the issue of the good faith of Keta's Chapter X petition. However, this point has not been briefed, and our decision, adverse to appellant, rests on other grounds. ,

advice of the Commission as to the disposition of the parent's assets, e. g., its wholly-owned subsidiaries, cannot also be obtained. Again, the superior protection afforded the parent's creditors in a Chapter X proceeding will be partially dissipated if the management of the subsidiary is not subject to the same control. In addition, it is obvious that the consolidated proceedings will result in an expedient and economical administration.[6] See, generally, Duggan v. Sansberry, 1946, 327 U.S. 499, 510–511, 66 S. Ct. 657, 90 L.Ed. 809; SEC v. U. S. Realty & Improvement Co., 1940, 310 U.S. 434, 448–454, 60 S.Ct. 1044, 84 L.Ed. 1293; Capitol Motor Courts v. LeBlanc Corp., 2 Cir., 1953, 201 F.2d 356, 358; certiorari denied, 345 U.S. 957, 73 S.Ct. 940, 97 L.Ed. 1378. Cf. Matter of Pittsburgh Rys. Co., 3 Cir., 1946, 155 F.2d 477, certiorari denied, Philadelphia Co. v. Guggenheim, 329 U.S. 731, 67 S.Ct. 89, 91 L.Ed. 632; Matter of Schafer's Bakeries, D.C.E.D.Mich.1955, 129 F. Supp. 82.

■■ Second, appellant argues that there has been no showing below that it is reasonable to expect that a plan of reorganization can be effected. Section 146 (3), 11 U.S.C.A. § 546(3). It is well settled that the petition need not contain a specific plan of reorganization. The petitioner need only demonstrate that there exists a reasonable possibility of successful reorganization. Matter of Castle Beach Apartments, Inc., 2 Cir., 1940, 113 F.2d 762; Matter of Julius Roehrs Co., 3 Cir., 1940, 115 F.2d 723; 6 Collier,

Bankruptcy (14th Ed.), § 6.09, pp. 1779–1780. The finding of the court below that this possibility exists is not clearly erroneous.

■ Third, relying upon the fact that, as a consequence of Birrell's manipulations, Swan-Finch and Keta assert antagonistic claims to certain properties and also dispute an alleged loan from Keta to Swan-Finch, appellant argues that Keta's creditors will be adversely affected by the termination of Keta's Chapter XI proceeding in favor of a consolidated proceeding with the same persons serving as trustees of both Swan-Finch and Keta. Section 146(4), 11 U. S.C.A. § 546(4). We are of the opinion that Keta's creditors have been adequately protected by the appointment of a trustee charged with the specific responsibility of protecting Keta's interests. In support of this conclusion we note that no Keta creditor has joined in this appeal. In fact, the creditor alleging the largest claim against Keta has expressed approval of the three-trustee administration. Furthermore, the three creditors alleged to have the next three largest claims have offered no objection to the Chapter X petition. The facts do not support appellant's belief that Keta's creditors will be adversely affected. Cf. Matter of Diversey Hotel Corp., 7 Cir., 1948, 165 F.2d 655, 658; Matter of Loeb Apartments, 7 Cir., 1937, 89 F.2d 461, 463.

Appellant's other contentions are without merit.

Affirmed. Costs to be paid by appellant.

---

6. The Securities and Exchange Commission, which has participated before this court and in the court below in support of appellees' position, points out that if Keta's Chapter XI proceeding were to be continued, any arrangement proposed by the debtor would require the approval of two courts. Before the trustees of Swan-Finch, in their role of owners of Keta, would have authority to propose an arrangement for approval in the Western District of Pennsylvania they first, as trustees of Swan-Finch, would have to obtain approval of their proposal in the Southern District of New York.