**164**

In the Matter of **FLEXTON CORPO-RATION**, Debtor.
No. 23991.

United States District Court
E. D. Pennsylvania.
March 29, 1956.

Sylvan D. Einhorn, Winer, Einhorn & Somerson, Philadelphia, Pa., for debtor.

Morris Weisman, Wexler, Mulder & Weisman, Philadelphia, Pa., for James Talcott, Inc.

David Rosen, Goff & Rubin, Drew J. T. O'Keefe, Philadelphia, Pa., for trustee.

W. Wilson White, U. S. Atty., Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for United States.

CLARY, District Judge.

This is a proceeding for reorganization of the above named debtor corporation under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The corporation filed a proceeding for reorganization under Chapter XI, 11 U.S.C.A. § 701 et seq. in the Southern District of New York which action, upon motion of creditors, was later removed to the Eastern District of Pennsylvania. A Receiver under Chapter XI was appointed by this court on January 25, 1954 and, when the proceeding was transferred to Chapter X, the same individual was appointed Trustee on May 19, 1954, and has since operated the business. The Trustee, in due course, presented two alternative Plans of Reorganization to the Court for approval, Plan A and Plan B, the details of which are not ·important for the purpose of this decision. The Court referred the matter

to the Referee, as Special Master, to report on the plans to the Court with his recommendation as to whether either, or both, were fair, equitable and feasible. Since it clearly appeared from the outset that one of the important elements in the consummation of any plan was the accurate determination of the amount of the lien claim of James Talcott, Inc., who held a chattel mortgage on all of the machinery and equipment of the debtor corporation, that matter was also referred to the Referee, as Special Master, for determination.

■ The Special Master duly filed his reports and the matter is presently before the Court on exceptions and objections of James Talcott, Inc. to the report, findings of fact and conclusions of law of the Special Master sur amount of lien claim of James Talcott, Inc. and exceptions and objections of James Talcott, Inc. to the report and recommendation of the Special Master sur plans of reorganization. The Government has also filed its exceptions to the amount of taxes determined by the Special Master to be due the United States. After the Special Master had filed his report, an Amended Proof of Claim was filed by the United States for taxes in the sum of $287,000, which claim exceeded by some forty thousand dollars the amount found by the Special Master to be due the United States. Insofar as the tax claim is concerned, the matter must be referred back to the Special Master for hearing. While neither the debtor nor the Trustee has indicated that serious objections will be offered thereto, nevertheless, they desire an opportunity to examine the claim before the Special Master.

The exceptions and objections of James Talcott, Inc. present a much more serious problem. Both the debtor and the Trustee have always seriously questioned the amount claimed by Talcott as a lien claim under the chattel mortgage executed in Pennsylvania as supplemented in amount by additions arising out of a certain factoring agreement executed in the State of New York. It is Talcott's position that all debts owed by the debtor to it are comprehended within the terms of the chattel mortgage or, to be precise, the total sum of $196,494.34, together with interest and attorney's fees, all of which Talcott contended is provided for in the aforesaid instrument. The Special Master found that only the sum of $111,729.72 was a lien claim and that Talcott was relegated to the class of a general creditor for the remaining sum of $84,764.62. He also lowered the 10% collection fee provided in the aforesaid instrument to 5%, which he determined to be reasonable. As to the report and recommendation of the Special Master sur plan of reorganization, Talcott also filed exceptions claiming that the report and recommendation were inconsistent with the express provision of the plan inasmuch as under the plan recommended, Plan B, the claim and chattel mortgage lien of James Talcott, Inc. were not to be affected and further that there is no evidence in the record to show that the plan is fair, equitable and feasible.

The Court has examined the entire record in this case and the report and recommendation of the Special Master with respect to the lien claim of James Talcott, Inc. In that report the Special Master differentiates between the chattel mortgage and the factoring agreement on which part of the claim is admittedly based. The interpretation of these two documents, in the light of the oral testimony which consists of some three hundred and sixty typewritten pages, presents many and involved questions of law which require further study on the part of the Court. The Court cannot immediately make a final determination of the exact amount due Talcott under its lien claim until after a further review of the record. Because of other pressing court business, this may require time and involve further delay.

The proceedings in this case have been protracted due to unfortunate series of

events including the death of the president and principal stockholder of the debtor corporation during the course of the hearings and the illness of the attorney for the debtor involving a serious operation requiring many weeks of hospitalization. Untoward events, rather than inattention on the part of the parties, therefore, appears to be the basis of the long delay. A study of the report of the Special Master sur plan of reorganization, however, has convinced the Court that prompt action is required to bring this proceeding to an early conclusion and with that in mind the Court makes the following observations.

■ The Special Master's conclusion that Plan B, the only plan seriously advanced by the Trustee, is fair, equitable and feasible was based on the premise that the debtor had available to it new financing in the sum of $550,-000. It is clear from a review of the record and the monthly reports of operations submitted to the Court that if financial assistance in that amount is not available, all questions presently posed to the Court are purely academic. If no plan is consummated and an adjudication is entered, jurisdiction in the action will vest in the Referee. The Receiver and Trustee appointed by this Court, William D. Teefy, has successfully operated the business of the debtor and has shown excellent business judgment in so doing. The quick assets of the corporation, as the Court reads the original balance sheet, were slightly in excess of $75,000 at the time of Mr. Teefy's appointment. The latest report as of February 29, 1956 shows quick assets of approximately $245,000. In his operation as Receiver, and later Trustee, from January 25, 1954, the date of his first appointment, to February 29, 1956, the business had total sales in excess of $2,250,000. The accounting report shows that from these sales a gross profit of $570,000 was realized with a net operating profit of $136,000, not taking into account, however, allowable depreciation which can be taken for income tax purposes of some $70,000. This operation was conducted with "scrap" as contrasted with "virgin plastics" (a much more profitable operation), since the Court would not permit its Trustee to utilize the credit necessary to manufacture materials from virgin plastics; this despite the fact that such credit was offered the Trustee, both on the basis of his successful operation of the business and his reputation as a business man. The Court considered the risk involved too great. It appears to the Court that in the present posture of this complicated case and in the exercise of its equitable powers, it should order the debtor to immediately secure to the Trustee financing which its president said under oath it had and could provide for the consummation of Plan B. The Court could not, under present circumstances, approve Plan B as fair, equitable and feasible, unless the necessary financing is available. The Court, therefore, will enter an order requiring the debtor to deposit in escrow, under conditions to be approved by the Court at the time of deposit, the stated sum of $550,000 not later than May 15, 1956. Unless such a deposit is made there is no likelihood that the debtor corporation can be reorganized. If the deposit is not made within the specified time the Court will enter such further order as may be necessary.

The determination of the Court to require the debtor to now produce evidence of financial resources is not to be considered as a final determination by the Court that the Plan is fair, equitable and feasible. It is the opinion of the Court, in the present status of the case, that while such deposit probably will make possible the development of Plan B to the point where the Court can determine that it is fair, equitable and feasible, there are certain other elements which must be further explored before ultimate decision is made. The deposit of the money will protect the lien creditors and should, in view of the fact that the debtor has a going business with every prospect of profita-

ble operation in the future, bring about a situation which would ultimately result in the approval of Plan B. The present action which is taken by the Court on its own motion and responsibility will, in the opinion of the Court, tend to facilitate final disposition of the proceeding.

The order to be entered by the Court will be without prejudice to the right of any party in interest to move to vacate, alter or amend said order.