In the Matter of **FLEXTON CORPORA-TION**, Debtor.

No. 23991.

United States District Court
E. D. Pennsylvania.
July 20, 1956.

Sylvan D. Einhorn, Winer, Einhorn & Somerson, Philadelphia, Pa., for debtor.

Morris Weisman, Wexler, Mulder & Weisman, Philadelphia, Pa., for James Talcott, Inc.

David Rosen, Goff & Rubin, Drew J. T. O'Keefe, Philadelphia, Pa., for trustee.

W. Wilson White, U. S. Atty., Joseph J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

CLARY, District Judge.

This proceeding for reorganization of the above named debtor corporation under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., is presently before the Court on exceptions of lien claimant James Talcott, Inc. to the report of the Special Master determining

the amount of the lien claim of James Talcott, Inc. and finding Plan B of Reorganization, as submitted by the trustee, to be fair, equitable and feasible.

In an earlier opinion In Matter of Flexton Corporation, D.C.1956, 139 F. Supp. 164, the Court concluded that as a necessary requisite to the consummation of Plan B of Reorganization the debtor should deposit in escrow with the trustee the sum of $550,000 and in an order entered on March 29, 1956 directed the debtor to secure, on or before May 15, 1956, the above stated sum to the trustee to effectuate the Plan of Reorganization.

The basis of the report of the Special Master that Plan B was fair, equitable and feasible was that the debtor corporation had available to it new financing in the sum of $550,000. The Court in its prior opinion made clear that its approval of Plan B was contingent upon the debtor securing the trustee with funds in that amount. Since the debtor has failed to so secure the trustee, little discussion is required on that particular point. When it became apparent that the debtor would not or could not meet the requirement laid down by the Court, the trustee endeavored to secure the necessary outside investment capital which would make reorganization of this debtor corporation possible. While several individuals and corporations with the necessary financial resources have evidenced an interest in investing substantial capital in the debtor corporation, no single one has made a firm offer to supply the necessary financial resources, although all have indicated a desire to purchase the debtor corporation outright. The Court, therefore, in conscience, under present circumstances cannot find that Plan B is fair, equitable and feasible.

The Special Master in his report made a finding with respect to the amount of the lien claim of James Talcott, Inc. that of its claim of $196,494.-34, only the sum of $111,729.72 was a lien claim, and that Talcott was relegat-ed to the class of general creditor for the remaining sum of $84,764.62. In his report the Special Master differentiated between the factoring agreement, which was executed in New York, and the chattel mortgage on certain of the plant's machinery, which was executed in Pennsylvania, and determined that the future advances in the sum of $84,764.62 did not come within the purview of the lien of the chattel mortgage. The position of Talcott has been that the factoring agreement and the chattel mortgage were all part of one single unified method of financing the business transactions of the debtor corporation and definitely contemplated further advances of money to the corporation which were intended to be covered by the lien of the chattel mortgage.

A careful review of the entire record has convinced the Court that the weight of the evidence, particularly in view of the clear testimony of Mr. Joseph A. Amato, vice-president of James Talcott, Inc., which is not controverted by any testimony of the debtor, that the factoring agreement and the chattel mortgage were both executed in connection with a complete single system of financing the debtor's transactions, is in favor of the lien claimant. The case in re The Matter of Riddlesburg Min. Co., Inc., 3 Cir., 1955, 224 F.2d 834, supports this conclusion. The testimony establishes that the later advances in the sum of $84,764.62 were intended by the parties to be covered by the lien of the chattel mortgage and come within its expressed terms. The Court, therefore, must sustain Talcott's exceptions and fixes the amount of the lien claim at $196,494.34.

The Special Master in his report determined the amount of attorneys' fees which would be allowed the lien claimant in connection with its preferred claim. The change in the amount allowed as a lien claim necessarily must change any amount which might be allowed the lien claimant for attorneys' fees. The Court will not at this time undertake to determine the amount which should ultimate-

ly be allowed since it is almost certain that there will be an adjudication of bankruptcy in this case and the Court prefers to permit the Referee to determine what equitable amount, if any, should be allowed under existing circumstances at the time of the liquidation of the debtor corporation.

■ ■A further matter which the Court must determine is the petition of Talcott for leave to foreclose its chattel mortgage against certain of the plant's machinery. There can be no question that if the Court should grant this petition, the value of the plant would be substantially reduced, if not almost entirely destroyed, and such action would seriously interfere with the orderly liquidation of the estate. The Court, therefore, at this time will deny the said petition.

■ As stated above, the trustee immediately attempted, once it became evident that the debtor corporation could not comply with the Court's order of March 29, 1956, referred to above, to obtain outside capital to rehabilitate debtor corporation. He likewise entered into negotiations with Talcott in an attempt to work out a solution respecting the lien claim of Talcott which would permit him to continue operations and gain additional time in which to interest outside capital. The negotiations resulted in a stipulation agreed to by all parties and their respective counsel which, when first submitted to the Court, appeared to offer a reasonable solution to the immediate difficulties confronting the trustee. Further consideration of the stipulation, however, which will be attached to this opinion and made part of the record, has convinced the Court that approval of the stipulation would prefer lien claimant as to assets not presently covered by its lien which is confined to certain machinery in the plant. It would

also adversely affect the interests of the United States which is second in priority with a very substantial tax claim. Under the circumstances the Court will refuse to approve said stipulation.

■ The Court feels that sufficient time has been allowed to effect reorganization in this case and that to further prolong this litigation, without any plan of reorganization before the Court susceptible of final approval, would defeat the legislative intent of Congress in providing for equitable but prompt disposition of causes under Chapter X of the Bankruptcy Act. It has been suggested to the Court that further action in this case is governed by Section 236(1) of the Bankruptcy Act, 11 U.S.C.A. § 636 (1). The Court, however, despite the fact that this cause was removed from the Southern District of New York and transferred from Chapter XI to Chapter X, is of the opinion that the applicable provision of the Bankruptcy Act is Section 236(2), 11 U.S.C.A. § 636(2). The Court in its order will provide that a hearing shall be held, after notice by the trustee to all parties in interest, to determine whether an order shall be entered adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the applicable provisions of the Bankruptcy Act, or that the proceedings be dismissed, as the Court may determine to be in the best interests of the creditors and stockholders.

The trustee has demonstrated that this corporation with adequate financing is capable of being operated profitably but, since the necessary financing is not presently available and there is no firm prospect of its becoming available in the immediate future, there is no alternative for the Court but to enter its order in accordance with the foregoing opinion.